RUCKER v. SMOKE.

1. AN EXCEPTION overruled which alleges error in charging that which the "Case" shows was not charged.

2. EXEMPLARY DAMAGES—ACTS OF AGENT.—In the seizure of personal property, a principal may be held liable for exemplary damages on account of wrongful, wanton, or malicious acts done by his agent, within the scope of his agency, although without previous authority or subsequent ratification. This rule grows out of the relation of principal and agent, and is, therefore, as applicable to individuals as to corporations.

Before ALDRICH, J., Lexington, September, 1891.

This was an action by F. B. Rucker against J. A. Smoke and F. J. Buyck, commenced January 24, 1890, to recover damages for trespass on the property of plaintiff, committed by Smoke, as the agent of Buyck, in December, 1889.

*Mr. C. J. Dantzler,* for appellant.

*Messrs. Andrew Crawford* and *Melton & Melton,* contra.

October 15, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This case, briefly stated, is as follows: The defendant Buyck, holding a chattel mortgage on a mule in the possession of the plaintiff, placed the same in the hands of the defendant Smoke, with instructions to seize the mule and dispose of the same according to law. Acting under this authority, Smoke went to plaintiff's premises and demanded possession of the mule, with which demand plaintiff refused to comply, whereupon said Smoke broke open the stable of plaintiff and carried off the mule. Thereupon this action was commenced to recover damages for the trespass alleged to have been committed. The plaintiff having recovered judgment, the defendant Buyck alone appeals upon the several grounds set out in the record.

The first and second grounds having been abandoned, it remains only to consider the third and fourth, which are as follows: "3d. Because his honor erred in charging the jury, that if possession of the property was denied to Smoke as the agent of F. J. Buyck, and if, instead of obtaining that possession peaceably and lawfully, he resorted to a breach of the · peace and violation of the criminal law, and went in there with a high hand and took the property, then he was violating the law of the land, and he is responsible, if nothing else is shown for that violation, and the principal is equally liable with him. 4th. Because his honor erred in charging the jury, in connection with the last above alleged error, that 'if you conclude that the defendants acted wrongfully, as I have tried to explain the law to you, it is a question of fact for you to say whether

they did it in an insulting manner, with a high hand; these are questions of fact for you to pass upon. If you find that these defendants did do so, why, then, it is in your sound discretion to assess what damages should be inflicted upon them;' and in charging the jury, that exemplary or vindictive damages, smart money, could be found against the defendant, F. J. Buyck, on account of the wrongful acts of his agent beyond the scope of his authority."

Counsel for appellant, in his argument here, claims that there are but two questions raised by this appeal: 1st. Whether the appellant Buyck is liable for exemplary damages on account of the wrongful, wanton, or malicious acts of his agent Smoke, unless done by his previous authority, or subsequently ratified by him. 2d. Is he liable for such acts of his agent beyond the scope of his authority? It seems to us that there is no foundation for the second question. As we read the charge of his honor, Judge Aldrich, which is set out in the "Case," we do not find that the jury was instructed that Buyck, the principal, could be held liable, either in exemplary or any other kind of damages, for any act done by the agent Smoke, beyond the scope of his authority. On the contrary, the jury were expressly instructed, that, to make Buyck liable for any act done by Smoke, such act must be within the scope of his agency, as is shown by the following language taken from the charge : "And just here the maxim of law is, that whatever is done by the agent of another is done by the principal, *if done within the scope of his agency.*" And, again : "Whatever of wrong doing Smoke was guilty of, his principal, Mr. Buyck, would be responsible for, *that is, if it was done within the scope of his agency.*" So, too, the instruction which is made the basis of the third ground of appeal is substantially a quotation from the latter part of a connected sentence in the charge, which commences with the following interrogation : "Did Mr. Smoke go to the premises of F. B. Rucker, as the agent of Mr. Buyck, to foreclose the mortgage; did he actually go *in pursuance of that agency?* If he did," then, if he committed any breach of the peace or other violation of the criminal law, in obtaining the possession of the property, which he was

sent there to seize, then both he and his principal would be
liable.   It is quite clear, therefore, from these quotations from
the charge (in which the italics are ours), that no such instruc-
tion was given to the jury as would raise the second question
suggested by counsel; but that the instructions really given
to the jury were just the contrary.

The first question, therefore, only remains to be considered.
As we understand it, the proposition contended for by the
counsel for appellant is, that a principal cannot be held liable
for exemplary damages on account of a wrongful, wanton,
or malicious act done by his agent, within the scope of
his agency, unless such act be previously authorized or
subsequently ratified by the principal.   We do not think that
this proposition can be sustained either by reason or authority.
When one person invests another with authority to act as his
agent for a specified purpose, all of the acts done by the agent
in pursuance, or within the scope of his agency, are, and
should be, regarded as really the acts of the principal.   If,
therefore, the agent, in doing the act which he is deputed to
do, does it in such a manner as would render him liable for
exemplary damages, his principal is likewise liable, for the
act is really done by him.   To apply this doctrine to the facts
of the case under consideration: if Smoke was appointed by
Buyck as his agent to seize the mule covered by the mortgage,
and he made the seizure which he was deputed to make in
such a manner as would render him liable for exemplary dam-
ages, then Buyck would also be liable, for the reason that, both
in law and in common sense, Buyck must be regarded as hav-
ing himself done the act complained of.

This view is, we think, fully sustained by authority.   In
Story on Agency, section 452, quoted with approval by Mr.
Justice McGowan in *Reynolds* v. *Witte*, 13 S. C., at page 18, we
find the rule laid down as follows: "It is a general doctrine of
law that, although the principal is not ordinarily liable (for he
sometimes is) in a criminal suit for the acts or misdeeds of his
agent, unless, indeed, he has authorized or co-operated in them,
yet he is held liable to third persons, in a civil suit, for the
frauds, deceits, concealments, misrepresentations, negligences,

and other malfeasances, misfeasances, and omissions of duty of his agent, *in the course of his employment*, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies, *respondeat superior;* and it is founded on public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency. The rule is also well stated in 1 Am. & Eng. Enc. L., at page 410, in these words: "A principal is liable to third parties for whatever the agent does or says; whatever contracts, representations, or admissions he makes; whatever negligence he is guilty of, and whatever fraud or wrong he commits: provided, the agent acts within the scope of his apparent authority; and, provided, a liability would attach to the principal if he was in the place of the agent."

This rule has been repeatedly recognized or acted upon in this State, as shown by the following cases cited by respondent's counsel: *Parkerson* v. *Wightman*, 4 Strob., 363; *Redding* v. *S. C. Railway Company*, 3 S. C., 1; *Palmer* v. *Railroad, Ibid.*, 580; *Epstein & Bro.* v. *Brown*, 21 *Id.*, 599; *Hall* v. *Railway Company*, 28 *Id.*, 261; *Avinger* v. *S. C. R. R. Company*, 29 *Id.*, 271, and *Quinn* v. *Railway Company, Ibid*, 381. It is true, that most of these cases were against corporations, and it is contended by counsel for appellant that the rule which has been applied to corporations should not be applied to natural persons, for the reason that corporations can act only through agents, while natural persons are not necessarily compelled to act through agents. We do not think there is any ground for such a distinction. The rule grows out of the relation of principal and agent, and is in no way dependent upon the character of the persons to which it is applied, and we see no reason why it should not be applied to natural as well as to artificial persons.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.