### MITCHELL v. LEECH.

1. BENEFICIARY SOCIETIES—PRINCIPAL AND AGENT.—The local camps of the Woodmen of the World are agents of the Sovereign Camp, and the Sovereign Camp.is liable for injuries inflicted on a member by a local camp in initiating him by means of a mechanical goat, although such contrivance was not authorized by the Sovereign Camp.

2. CHARGE—WRITTEN INSTRUMENTS—HARMLESS ERROR.—It is duty of trial Judge to construe written instruments, but here his submitting to the jury the construction of the articles of.incorporation, constitution and by-laws and insurance policy of the Woodmen of the World, gave the jury an opportunity to find against plaintiff on a question of fact, and was not prejudicial error to defendants.

3. WITNESS—CONTRADICTION.—A physician on the stand as an expert cannot be contradicted by asking him if a certain author is standard, and if extracts therefrom are correct.

Before TOWNSEND, J., York, November, 1903.   Affirmed.

Action by Samuel W. Mitchell against Joseph W. Leech, Dennis Whisonant, Samuel Leech, and Sovereign Camp of the Woodmen of the World. From judgment for plaintiff, defendants appeal.

*Messrs. D. E. Finley, J. S. Brice* and *H. C. Brome,* for appellants, cite: *Court must construe written instruments:* 17 S. C., 479; 19 S. C., 124; 22 S. C., 279; 31 S. C., 378; 32 S. C., 123; 34 S. C., 217; 39 S. C., 389; 63 S. C., 422. *Expert may be examined as to how far standard authors sustain or conflict with his opinion:* 20 S. C., 451; McKelvey on Ev., 188. *Sovereign Camp not responsible for acts of local camp:* 7 On. R. Q. B. D., 377; 75 N. C., 134; 1 East., 106; 19 Wend., 343; 73 Miss., 161; 177 U. S., 263.

*Messrs. Geo. W. S. Hart* and *Jas. F. Hart,* contra. ˙The former cites: *Party must request Court to construe written instrument:* 44 S. C., 402; 56 S. C., 135; 66 S. C., 22; 10 S. C., 439. *As to examination of physician as to standard authors:* 59 Am. D., 179; 51 Am. R., 679; 67 Am. St. R., 299; 41 Am. R., 60; 42 Am. R., 477; 15 Ency., 207; 50 Mich., 148; 20 S. C., 451; 12 Rich., 328; 58 S. C., 219; Code, 1902, 2902.

July 14, 1904. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action for damages sustained by the plaintiff, on the night of his initiation into a subordinate camp of Woodmen of the World, in consequence of the use of a mechanical goat. The jury rendered a verdict in favor of the plaintiff for $1,000.

The assignments of error are as follows:

"1. Because it is respectfully submitted that his Honor, the presiding Judge, erred as a matter of law in charging the jury as follows: 'Now, it is argued here by the plaintiff that the subordinate camp is a constituent part of the Sovereign Camp. Now, that is matter of fact for you to find from the testimony, whether it is or not. That involves a different principle than the principle involved in mere agency. If the subordinate camp is a constituent part of the Sovereign Camp, if you find that the subordinate camp is a part of it, then the act of the subordinate camp is the act of the Sovereign Camp, that is the act of one and the same party'—thus leaving it to the jury to interpret the written instruments offered in evidence in which the relation existing between the Sovereign Camp and the subordinate camps were fully set forth, to wit: the articles of incorporation of the Sovereign Camp, the constitution and by-laws of the order and the insurance policy issued by the Sovereign Camp to the members of the subordinate camps.

"2. Because his Honor erred as a matter of law in not construing the articles of incorporation, the constitution and by-laws of the order and the insurance policy issued by the

Sovereign Camp to the members of the subordinate camp as to whether or not the subordinate camp was a constituent part of the Sovereign Camp, instead of leaving it to the jury to determine as a question of fact what that relation was. :

"3. Because his Honor erred in leaving it to the jury to construe the articles of incorporation, the constitution and by-laws of the order, the ritual of the order and the insurance policy issued by the order—all of which were written instruments, and to determine as a question of fact whether or not the subordinate camp was a constituent part of the Sovereign Camp.

"4. Because his Honor erred as a matter of law in refusing to charge the jury, 'If you find from the evidence that the defendant, Sovereign Camp Woodmen of the World, is a fraternal beneficiary association, having power only to collect assessments and dues from its members, to pay death losses, for the erection of monuments and the payment of the legitimate expenses of the management of its business, then you are instructed that the plaintiff is conclusively presumed to have known at the time of his initiation as a member of the local camp at Hickory Grove, that the defendant, Sovereign camp of the Woodmen of the World, was not liable for the torts of the local camp, or its members, and your verdict should be for the defendant, Sovereign Camp.'

"5. Because his Honor erred as a matter of law in charging the jury as follows: 'Our law does not go so far as to say in a case like that that the plaintiff should be conclusively presumed to have known that the parent camp, I will call it, the Sovereign Camp, would not be liable for its torts. That is a matter of fact for you to find'—thus leaving it to the jury to construe the articles of incorporation, the constitution and by-laws of the Sovereign Camp, the ritual furnished by the Sovereign Camp, and the insurance policy issued by the Sovereign Camp—all of which were written instruments, and determine as a question of fact whether or not the Sovereign Camp was liable for the torts of the members of the subordinate camp.

"6. Because his Honor erred in not instructing the jury that the written instruments in evidence above referred to showed that the Sovereign Camp was not liable for the torts of members of the subordinate camps.

"7. Because his Honor erred in refusing defendant's motion for a new trial upon the grounds that the verdict was contrary to the weight of the testimony, and upon the further grounds that his Honor had erred in leaving to the jury to decide as a matter of fact, whether or not the subordinate camp was a constituent part of the Sovereign Camp and whether or not the Sovereign Camp was liable for the torts of the members of the subordinate camp, and in not construing the articles of incorporation, constitution and by-laws and insurance policy.

"8. Because the verdict against the defendant, Sovereign Camp, was contrary to law and evidence, in that it being admitted that there was nothing in the initiatory exercises prescribed and required by the Sovereign Camp that required the use of a mechanical goat, and that the plaintiff, if injured at all, was injured while riding a mechanical goat, the Sovereign Camp was in no way liable for such injury.

"9. Because the verdict was contrary to the law, in that it holds the Sovereign Camp liable for the torts of the members of the subordinate camp.

"10. Because the verdict was contrary to the law and the evidence, in that the evidence showed that the defendant was not injured, as alleged, while being initiated into the order of the Woodmen of the World.

"11. Because his Honor erred in refusing to allow defendant's counsel to ask Dr. J. D. McDowell, an expert witness for plaintiff, 'if Lydston was a standard medical work on genito-urinary and venereal and sexual diseases,' and his Honor further erred in not allowing defendant's counsel to read extracts from said work and ask said witness if said statements were true.

"12. Because his Honor further erred in not allowing defendant's counsel to ask Dr. W. M. Love, an expert witness

for defendant, if certain medical works were standard and good authority, and his Honor further erred in refusing to allow defendant's counsel to ask said witness if certain statements in medical works were true, and, also, in refusing to allow defendant's counsel to ask Dr. M. J. Walker, a witness for plaintiff, the same question."

We will first construe the instruments in writing introduced in evidence, for the purpose of ascertaining the relation the Sovereign Camp of the Woodmen of the World, the subordinate camps, and the members sustained towards each other.   In the amended and substituted articles of incorporation of the Sovereign Camp of the Woodmen of the World, are the following:

"*Article I.* The name of this corporation is 'Sovereign Camp of the Woodmen of the World,' and its principal office and place of business shall be in the city of Omaha and State of Nebraska.

"*Article II.* This corporation is and shall be a fraternal beneficiary association, formed and carried on for the sole benefit of its members and their beneficiaries, and not for profit.   It has and shall continue to have a lodge system, with ritualistic form of work and representative form of government.

"*Article III.* The object for which this corporation was formed and its plan of doing business are and shall be to combine white male persons between the ages of 18 and 55, of sound bodily health, and exemplary habits and good moral character, who shall be required to pass a satisfactory medical examination, into a secret, fraternal, beneficiary and benevolent order, to provide funds derived from beneficiary calls, assessment and dues collected from its members for the payment of the expenses of conducting the business thereof, and to create a fund to be paid to beneficiaries on the death of a beneficiary member, and to erect a monument at the grave of each deceased beneficiary member, and for such other purposes as the corporation may from time to time determine, not prohibited by the laws of the State of Nebraska.

27—69

"*Article IV.* This corporation shall have power through its Sovereign Camp and Executive Council, to provide a constitution and laws, by-laws, rules and regulations for its own government and that of its camps and members, and to alter and amend its constitution, laws, by-laws, rules and regulations at any session of the Sovereign Camp or Sovereign Executive Council. The constitution and laws, by-laws, rules and regulations now in force shall continue in force and effect until altered, amended or repealed. It shall have power to purchase and hold such real and personal property as shall be necessary for its convenience and use, and may sell, transfer or dispose of the same as it may deem necessary. It shall have power to levy assessments and dues on all its members, to fix the amount thereof and the manner of collecting the same. It may contract for the purchase and sale of supplies, paraphernalia, badges and other appliances used in the work and business of the order, and may do all other acts and things necessary to carry out the objects and purposes for which it is organized.

"*Article V.* \* \* \* The Sovereign Camp shall have and may exercise full legislative power in all matters affecting its management and good of the order. It may provide for the suspension and expulsion of camps and members, for failure to pay assessments, dues or other demands of the Sovereign Camp, or its officers acting under the constitution and laws of the order, and for the violation of the constitution and laws of the order as they now exist or may hereafter be adopted."

The constitution of the Sovereign Camp of the Woodmen of the World contains these sections:

## "*Name.*

"Section 1. This corporaton shall be known as 'Sovereign Camp of the Woodmen of the World,' and shall be composed of a Sovereign Camp, beneficiary head camps, convention head camps and camps with powers and duties as hereinafter defined.

## "*Powers.*

"Sec. 2. The 'Sovereign Camp' shall have original and appellate jurisdiction in all matters pertaining to the general welfare of the order. It may entertain and determine charges against any of its members, and all other matters of controversy which may be brought to it on appeal from camps, head camps, convention head camps and the Sovereign Executive Council. * * * and its decision shall be final. It shall issue and may revoke charters to camps * * * It shall have the power to enact laws for its own government, the government of its convention, head camps and camps, and for the control and management of the business of the order generally * * * and to provide penalties for the violation thereof. It shall have power to prescribe the rights, privileges, duties and responsibilities of itself, its camps and the members of the order, and to finally determine the same. It shall prepare and publish the rituals and ceremonies of the order, which shall not be altered, changed or amended. * * * It shall have the power to provide for the levy and collection of assessments and dues on its members * * * necessary to pay all beneficiary claims and expenses of management, and shall have generally such powers and may perform such duties as it may deem wise for the welfare of the order and to establish the rights and perpetuity of the order. It shall be the sole judge of the election and qualification of its own officers and members and shall establish rules for their government, and may by itself or through its Sovereign Executive Council suspend or remove any officer or member for cause.

## "*Beneficiary Certificates.*

"Sec. 52. All beneficiary certificates shall be issued in the name of 'Soveregn Camp of the Woodmen of the. World,' and shall be signed by the sovereign commander and sovereign clerk, attested by the corporate seal. They shall be countersigned by the counsel commander and clerk of the .camp, and shall not be issued for less than five hundred ($500) dollars nor for more than three thousand ($3,000)

dollars, and shall be in such form as shall be prescribed by the sovereign commander in conformity to the laws of the order.

"Sec. 81. Camps shall only have such powers as are given by the constitution and laws of the Sovereign Camp. They may adopt by-laws for their own government not inconsistent with the constitution and laws of the Sovereign Camp, but such by-laws must be submitted to and approved by the sovereign commander before taking effect."

There is nothing in the ritual of the order authorizing the use of a mechanical goat as part of the ceremony in the initiation of a member.

In order to accomplish the objects for which the Sovereign Camp was organized it was necessary from the very nature of the business to call to its assistance the services of persons through whom it might act, in transacting the affairs of the order in various localities. It selected and organized local lodges for the purpose of meeting this necessity. Not only the subordinate camps but the members as well, were under the complete direction and control of the parent camp, in whose name the benefit certificates were required by the constitution to be issued; and when a member died, payment of the benefit certificate was to be made by the Sovereign Camp. These facts show that when a person was initiated in a local lodge, he became, to all intents and purposes, a member of the Sovereign Camp. And they further show, under the authority of *Blackwell* v. *Mortgage Co.,* 65 S. C., 118, 43 S. E., 395, that the subordinate camps were the agents of the Sovereign Camp. In the case just mentoned, the Court uses this language: "The business of the company was such as necessarily compelled it to rely upon the work of other parties, and this necessity usually and naturally gives rise to the employment of agents. When, therefore, this work is done by others, there is a strong implication that they are the agents of the parties receiving the benefit of their services."

Our conclusion that the subordinate lodge was the agent of the Sovereign Camp is in harmony with the cases of *Su-*

*preme Lodge K. of P.* v. *Withers,* 177 U. S., 260; *Murphy* v. *Independent Order of the Sons and Daughters of Jacob of America,* 50 L. R. A. (Miss.), III.; and *Bragaw* v. *Supreme Lodge K. & L. of Honor,* 54 L. R. A. (M.), 602. As the subordinate lodges were the agents of the Sovereign Camp, the acts of the local camps were binding upon the parent camp if performed within the scope of the agency, even though not authorized by the Sovereign Camp.

The Court in the case of *Hutchison* v. *Real Estate Co.,* 65 S. C., 75, 43 S. E., 295, quotes with approval the following language from section 452 of Story on Agency : "It is a general doctrine of law that although the principal is not ordinarily liable (for he sometimes is) in a criminal suit for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in them, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, negligences and other malfeasances and omissions of duty of his agent *in the course of his employment,* although the principal did not authorize or justify or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies, *respondeat superior,* and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings either directly with the principal or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby in effect he warrants his fidelity and good conduct in all matters within the scope of the agency." To the same effect is the case of *Reynolds* v. *Witte,* 13 S. C., 5.

His Honor, the presiding Judge, should have construed the instruments of writing introduced in evidence and in the manner just stated, but his failure to do so. was not prejudicial to the appellants, for his charge gave the jury the opportunity of finding against the plaintiff upon a question of fact that should not have been submitted

to them. These views dispose of all the exceptions except those numbered eleven and twelve.

The eleventh exception will next be considered. The record shows that the question arose in the following manner: "Doctor, is Lydson a standard medical work on genito-urinary and venereal and sexual diseases? (Mr. Hart: I object; medical books are not evidence; medical books are not evidence except in cases of insanity. Medical books are not evidence in cases of this character.) Q. I will ask him if that is good authority? (Mr. Hart: I object to that. Mr. Brice: This is an expert witness, and the witness had stated that the authorities, medical authorities, that is what the witness means, state that a man can have an injury so slight as not to be noticed at the time and yet serious results follow. I am not introducing the authority, I am simply asking him whether this is an authority. The Court: The object of the question is to introduce the book? Mr. Brice: I am simply going to ask him if this is an authority, and read him a piece and ask him if that is good authority or not? The Court: That introduces the book. You wish to contradict or qualify the opinion of the doctor on the stand. Otherwise it would be irrelevant. Testimony excluded. Exception taken.)" The presiding Judge simply ruled that you could not contradict or qualify the opinion of the doctor on the stand by showing what some author had said. In this there was no error.

We proceed to consider the last exception. The question presented by this exception arose as follows: "Q. Doctor, which one of the testicles are these tubercular germs more likely to attack? A. Well, sir, the right testicle is more susceptible to tubercular diseases than the left. There has never been any logical reason given why it is the case. Q. But you state that to be the fact? A. Yes, sir; in eighty per cent., eight cases out of ten. Eight cases out of ten occur in the right testicle. (Mr. Hart: You are giving your own experience, nothing that is recorded? A. It is an opinion based on what I have read, not what I have seen. Q. That

is your opinion? A. It is an opinion based on what I have read. Mr. Hart: The witness is still referring to authorities. The Court: Just give your opinion. The witness: Your Honor, I don't know how to answer that question. If your Honor tells me not to answer that question, I will not do so. The Court: When they ask a question, tell what you know, what your experience has been, what your opinion is.)" This ruling was not erroneous, as it allowed the witness to state his opinion.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.