## 7111

BROWN v. AMERICAN TELEPHONE AND TELEGRAPH CO.

1. PRINCIPAL AND AGENT—FRAUD.—A principal is liable for the fraudulent act of his agent done in the course of his employment in the absence of knowledge or notice of the fraud being brought home to the principal and an opportunity given to repudiate.
2. ESTOPPEL—FRAUD.—Where a party, who can read, relies on the statements of another as to the contents of a permit, who misinforms and misleads him, he is not estopped by the writing after signing it from suing for damages caused to his property from acts committed under the permit.
3. REAL PROPERTY—FRAUD.—Entry upon land under a permit obtained by fraud and misrepresentation cannot be excused by the grant.

Before WATTS, J., Spartanburg.   Affirmed.

Action by Mary R. Brown against American Telephone and Telegraph Company.   From judgment for plaintiff, defendant appeals.

*Mr. Ralph K. Carson,* for appellant, cites: *Plaintiff is estopped by her grant:* 78 S. C., 419; 9 S. C., 449; 69 S. C., 100.   *No recovery for punitive damages should have been permitted under proof:* 1 Suth. on Dam., sec. 392; 1 Leg. Dam., 362; Woods Mayne on Dam., sec. 579; 20 S. C., 718; 7 Wis., 465; 65 Ia., 543; 34 S. C., 501; 69 S. C., 434; 62 S. C., 270; 147 U. S., 101.

*Messrs. Wilson & Osborne,* contra, cite: *If occupation of land was without consent of owner, expressed or implied,*

*occupant is a trespasser:* 76 S. C., 98; 38 S. C., 308; 62 S. C., 56; 37 S. C., 387; 71 S. C., 148, 152, 154, 571, 528, 95; 79 S. C., 429. *In action for wilful trespass no demand is necessary:* 79 S. C., 431. *Punitive damages are recoverable for the fraud of the agent:* 70 S. C., 108; 79 S. C., 333; 58 S. C., 145; 69 S. C., 69.

March 3, 1909. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action for damages. The allegations of the complaint (omitting the formal portions thereof) are as follows:

"That on the       day of       1901, the defendant, oppressively, without right, with a high hand, and in reckless and wanton disregard of plaintiff's rights, went upon her tract of land, which lies partially in said county of Spartanburg, bounded by lands of R. R. Brown, C. P. Petit, Jos. Lee and W. T. Hammett, and cut a swath of about eighteen feet width through her woodland, a part of said tract, by cutting down the timber for said width and for a distance of six hundred yards, while constructing its lines of poles and wires; to her damage one thousand dollars."

The defendant denied said allegations, and set up the following defense:

"That on or about the       day of May, 1901, the plaintiff, for valuable consideration, granted to the defendant, under her hand and seal, the right to enter upon the premises and construct its telephone lines, and that the said lines were constructed by virtue of and in accordance with the terms of said grant."

The defendant also contended that the plaintiff was estopped by her laches from instituting this action.

The defendant made a motion for a nonsuit, which was refused.

The only evidence which the defendant introduced was the grant of the right of way, executed by the plaintiff,

giving the defendant the right to construct its line, and to cut down any trees that might interfere with it.

The jury rendered a verdict in favor of the plaintiff for $750 (which was reduced to $500), and the defendant appealed.

The first exception is as follows:

"The Court below erred in refusing defendant's motion for a nonsuit, the error being:

a. "In holding that a principal was liable for punitive damages for the fraud of its agent in the absence of knowledge of notice of the fraud being brought home to the principal, and an opportunity given to repudiate.

b. "In not holding that plaintiff was estopped by her written grant for right of way, she having testified that she could read, had an opportunity of reading, that she signed the same without reading, and that defendant's agent did not make any statement to her as to the contents of the paper; and by her laches.

c. "In not holding that the plaintiff, having permitted defendant to enter, and there being no proof of demand or refusal of compensation, that her remedy by condemnation under the statute was exclusive."

We will consider subdivisions a, b, and c in their regular order.

a. The following cases show that this assignment of error can not be sustained, as the principal is responsible for the fraudulent act of his agent, where it is done in the course of his employment, and even when it may have been performed contrary to the express directions of the principal. *Reynolds* v. *Witte,* 13 S. C., 5; *Rucker* v. *Smoke,* 37 S. C., 377, 16 S. E., 40; *Hutchinson* v. *Real Estate Co.,* 65 S. C., 75, 42 S. E., 295; *Williams* v. *Tolbert,* 76 S. C., 211, 56 S. E., 908.

b. The testimony not only discloses the facts set out in this subdivision, but it also tends to show that the plaintiff relied upon the statements made by the agent of the defend-

ant, who misinformed and mislead her as to her rights, as will be seen by reference to the following testimony of the plaintiff: ˙

"Q. In 1901, did this company cut through your woodland? A. Yes, sir. Q. Had you given any permission to do that? A. Well, he came to me, a gentleman did, and wanted me to give him a right of way through my plantation for the poles, and I hesitated a right smart and said, 'I will ask you to go and see J. V. Phillips'; and he said, 'No use, we can go anywhere'; and, of course, I asked him if there would be any damage, and he said, 'There will not be a tree cut on the plantation'; that he might have to have a few limbs cut down, and said there would not have to be a tree cut down on my plantation."

Cross-examination: "Q. You and this gentleman, you say, talked some time? A. Yes, sir; he seemed to be in a very great hurry, and did not stay long. Q. He told you the company had the right to go through there anyhow? A. Yes, sir. Q. After the conversation he handed you the paper to˙ sign, and you signed it? A. Yes, sir. Q. And you did not ask him to read it to you, or ask your daughter? A. No, sir. Q. You did not tell him? A. He said it did not make any difference whether we signed it or not. Q. You let him go through because he told you the company could go through without your consent? A. Yes, sir; he said he worked for the Bell Telephone Company."

Mrs. Lula Caldwell, daughter of the plaintiff, testified in her behalf as follows, on cross-examination:

"Q. What was it he wanted you to sign the paper for? A. He wanted a right of way through the land over the plantation, and would not have any timber cut, only a few limbs. Q. That is what the paper was to be? A. Yes, sir. Q. You did not read it? A. No, sir. Q. Your mother cannot read without her specks? A. No, sir; I do not think she could at that time. Q. She just took the agent's word for it? A. Yes, sir."

c. It cannot be said that the plaintiff permitted the defendant to enter when the paper under which the entry was made was obtained through fraud and misrepresentation.

The second exception is as follows: 2. "The Court below erred in refusing to direct a verdict for the defendant upon the whole testimony."

The record fails to disclose the fact that such a motion was made, but even if there was such a motion it was properly overruled.

Appeal dismissed.