7446

### GREEN v. PEOPLE'S WAREHOUSE CO.

PARTNERSHIP—PRINCIPAL AND AGENT.—There was evidence here tending to show the purchase of the tobacco in question on a farm was by an agent of the partnership and was within the apparent scope of the partnership, and the partners are liable for the purchase price, although it had been agreed they were not to share in the profits of, or be liable for, such purchases. There was also evidence of ratification by partners of the acts of the party acting as their agent.

Before GARY, J., Clarendon, February, 1909. Affirmed.

Action by R. H. Green against E. P. Ervin, W. E. Jenkinson and W. K. McIntosh, co-partners as People's Warehouse Co. From Judgment for plaintiff, defendant appeals.

*Mr. Charlton DuRant,* for appellants, cites: *Declarations of agent not admissible:* 77 S. C., 184; Whart Ev., sec 1173; 1 Green. Ev., secs. 113, 114; 1 So. R., 345; 36 S. C., 10; 14 S. E., 983; 17 S. C., 139; 2 Tread., 615; 3 Rich. L., 46; 19 S. C., 373; 28 S. C., 159, 15 S. E., 242; 2 Strob., 141; 18 S. E., 130; 21 S. E., 447; 72 S. C., 252, 5 S. E., 343; 35 S. E., 529; 73 S. C., 57; 49 S. E., 328; 72 S. C., 424. *Ratification by principal:* 30 S. C., 121, 1 S. E., 395; 8 Abb. N. C., 291; 7 Hill, 132; 14 So. R., 335; 73 Ala., 446; 45 N. Y. Supp., 407; 16 N. E., 201; 57 N. Y. Supp., 741; 1 Am. Eng. L., 1189; 44 Pac. 333.

*Messrs. Davis* and *Weinberg,* contra, cite: *Proof of agency:* Green. on Ev., sec. 113; 72 S. C., 121; 79 S. C., 587; 77 S. C., 187; 76 S. C., 531; 74 S. C., 221; 72 S. C., 255; 73 S. C., 48; 55 S. C., 568. *One partner's powers:* 17 Ency., 987-9, 991-2, 1010, 1080, 1077-8; 47 S. C., 139; 69 S. C., 421.

February 22, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to recover a balance, amounting to four hundred forty-three and 9-100 dollars, alleged to be due for tobacco, sold by the plaintiff to the defendants.

The facts are thus set out in the complaint:

"That at all of the times hereinafter mentioned, the defendant were co-partners doing business in the town of Manning, under the firm name and style of Peoples', Warehouse.

"That on about the 17th day of September, 1907, at the farm of the plaintiff in said county, the plaintiff sold to the

said defendants, and said defendants purchased of this plaintiff, six thousand one hundred and eighty-nine (6,189) pounds of tobacco, at and for the price of nineteen ($19.00) dollars per one hundred pounds, said sale and purchase being made for and by one B. M. Hardy, the defendant's agent, the purchase price to be paid plaintiff by defendants, upon sale of tobacco upon defendant's warehouse floor.

"That six thousand eight hundred and six pounds of said tobacco was ungraded, and twelve hundred and eighty-seven (1,287) pounds thereof was graded; that in accordance with instructions of defendants' said agent, plaintiff delivered at a pack or grading house, upon the place of defendants' said agent, where plaintiff was informed and believes the defendants were having their ungraded tobacco graded, the said six thousand eight hundred and six pounds of ungraded tobacco, and plaintiff delivered upon the floor of defendant's warehouse in Manning, the said twelve hundred and eighty-seven pounds of graded tobacco, for which the defendants on the 20th day of September, 1907, paid plaintiff under the terms of the aforesaid contract, the sum of two hundred and forty-four and 53-100 ($244.53) dollars.

"That thereafter, plaintiff is informed and believes, the defendants, because of insufficient force for the rapid handling and grading of the great quantity of tobacco upon its said agent's floor, permitted a large quantity of said ungraded tobacco to spoil and rot, and thereby materially reduce its market value, and upon learning these facts the defendants repudiated the contract of their said agent, and endeavored to induce him to throw the tobacco so ruined back on the plaintiff, which said agent declined to do.

"That thereafter, plaintiff is informed and believes, the defendant's said agent, upon the defendants positively refusing to receive any more of said tobacco, and positively refusing to pay for same, disposed of it as best he could, in its damaged condition, for the account of the defendants, and from time to time paid plaintiff sums of money, aggregat-

ing seven hundred and seventy-three and 89-100 ($773.89) dollars, including one dollar paid plaintiff at the time of sale to bind the trade.

"That the total contract price for said tobacco was fourteen hundred and sixty-one and 51-100 ($1,461.51) dollars, upon which the defendants are entitled to credits, aggregating one thousand and eighteen and 42-100 ($1018.42) dollars, leaving a balance of four hundred and forty-three and 9-100 ($443.09) dollars due and owing the plaintiff by the defendants, which they refuse and decline to pay."

The defendants denied all these allegations, except the fact of partnership between the defendants.

The jury rendered a verdict in favor of the plaintiff for the amount claimed; whereupon the defendants made a motion for a new trial, which was refused.

The defendants appealed upon several exceptions, but they all depend upon the question, whether there was any testimony tending to show that the party who purchased the tobacco was the agent of the defendants for that purpose.

F. P. Ervin, one of the defendants, thus testified as to the terms of the partnership: "Q. What was your agreement at the time of forming this partnership? A. We were to conduct a tobacco warehouse business as I have explained. Q. What agreement as to the amount of purchases? A. Tobacco should be purchased on the warehouse floor; no tobacco to be bought in the country in the name of certain of us. When we instructed Mr. McIntosh to take care of the floor and books at the time, at the beginning of the season there is little demand, as it don't amount to more than four or five hundred dollars, and we asked him to care for it as a warehouseman should. The management was left entirely with Mr. McIntosh."

W. K. McIntosh testified as follows: "Q. These accounts there, were they known to your partners, that you were buying for speculation? A. Oh, yes, sir, that was our agreement when we went into the business. I could do it for

speculation, if I wanted to. They were sharing none of the profits, but got charges like anybody else. Q. That was all that they got out of it? A. That was everything. * * Q. Do you mean to say that they knew that you were going into the side business? A. Yes, sir, they knew I was going to buy for speculation. Q. And permitted it to be done and agreed to it? A. It seems like they did."

This testimony tends to show that the purchase of tobacco for speculation by W. K. McIntosh, a member of the firm, was in pursuance of the agreement entered into by those composing the partnership, for the purpose of increasing the business of the firm, as they received their commission on all tobacco purchased by McIntosh. The buying of tobacco in the country was, therefore, within the apparent scope of the partnership, and although the testimony tended to show that the firm was not to share in the profits, and was not to be responsible for purchases made by McIntosh, they cannot escape liability by an agreement to that effect.

This is conclusively shown by the case of *Williams* v. *Tolbert,* 76 S. C., 211, 56 S. E., 908. See also *Rucker* v. *Smoke* 37 S. C., 377, 16 S. E., 40; *Reynolds* v. *Witte,* 13 S. C., 5; *Hutchinson* v. *Real Estate Co.,* 65 S. C., 45, 43 S. E., 295; *Mitchell* v. *Leech,* 69 S. C., 413, 48 S. E., 290, 66 L. R. A., 723; and *Brown* v. *Tel. Co.,* 82 S. C., 173.

There was also testimony tending to show that the defendants ratified the acts of the party who purchased the tobacco from the plaintiff, as their agent.

The exceptions are, therefore, overruled.

Judgment affirmed.

MR. JUSTICE WOODS, *dissenting:* The only issue in this case was whether Hardy bought the tobacco from plaintiff as the agent of defendant Warehouse Company or for himself and others. The plaintiff testified that Hardy represented himself to be the agent of the People's Warehouse Company. This evidence was admitted by the Court on

condition that the plaintiff should produce evidence of ratification by the defendants. At the close of the testimony, a motion was made to strike out this evidence and direct a verdict. The Circuit Judge properly refused the motion on the ground that it was for the jury to say whether the representations of Hardy had been ratified by the defendants. Thereafter, the defendant submitted the request to charge "that the declarations of an agent are not evidence of agency, unless ratified by principal." This instruction was not given to the jury, as requested, nor in substance. It seems to me that the failure to give it was an important omission, quite injurious to the defendant and on account of this vital error there should be a new trial.