8633

ROBERTSON v. WESTERN UNION TELEGRAPH CO.

1. WAIVER—OFFICE HOURS.—There was sufficient evidence in this case to carry to the jury the issue of waiver of office hours.

2. TELEGRAPH COMPANIES—PRINCIPAL AND AGENT.—Where an agent of a telegraph company receives and transmits messages out of office hours in violation of the carrier's instructions, the carrier is responsible if the agent was acting within the scope of his employment.

3. VERDICT—JURISDICTION.—This Court has no jurisdiction to set aside a verdict because excessive unless it is so excessive as to manifest capriciousness or fraud.

4. TELEGRAPH COMPANIES—OFFICE HOURS—WAIVER.—Where there was evidence to the effect that the office hours at the receiving office had been habitually disregarded before the receipt of the message in question, the carrier cannot relieve itself of liability for failure to deliver on the ground that the telegram did not reach its destination until after office hours.

5. IBID.—CHARGE—HARMLESS ERROR.—Failure to give a request that there was no special agreement to deliver a telegram, *is held* to have been harmless here as there was evidence tending to show a general waiver of office hours and because of the charge as to the burden of showing such agreement, and as to duty of jury to disregard the contention if there was no evidence to support it.

Before SHIPP, J., Edgefield, October, 1912.    Affirmed.

Action by Sallie Robertson against Western Union Telegraph Company. Defendant appeals on the following exceptions:

(1) "In that his Honor erred in admitting the testimony of J. L. Mims as to office hours at Edgefield and the reasonableness thereof—the Court ruling as follows: 'I have ruled that you can put in the paper and you can prove what you please as to conditions in Edgefield. Now, the question as to reasonableness of the Ninety-Six office hours would depend on conditions at Ninety-Six.'

"Telegraph Office Hours."

" 'Until further notice the following office hours will be observed by the Western Union Telegraph Company's office at this city:

" 'Daily, except Sunday, open from eight a. m. to eleven a. m. and from three-thirty p. m. to five p. m. In case of urgent necessity and death, special services will be rendered to the public. In such cases, if the operator is not in the office, he will be found at his residence, and will respond promptly to any calls. J. R. Nicholson, Operator and Manager.'

"The error being that the office hours and conditions in Edgefield was not an issue in this case, and the evidence concerning the same was irrelevant and should have been excluded.

(2) "In that his Honor erred in admitting the testimony of M. A. Taylor as to conditions in Edgefield over the objection of defendant: 'How many banks are there here? Two. How many oil mills? One. How many cotton mills? One. How many stores? Twelve or thirteen, I suppose. How many population? Between eighteen hundred and two thousand. You knew about the amount of work that went to the office when you were the telegraph operator? Yes, sir; at that time. State to the jury whether or not the office hours at Edgefield from eight a. m. to six p. m. are reasonable?

"(Objected to by Mr. Evans.)

" 'I do not think it is reasonable, not in the months of July and August, because it is not night at that time. Now state to the jury whether or not the office hours published in that paper in your judgment are reasonable? They have it 7:30 p. m. Yes, sir? That would be reasonable at that time of the year, unless they had a night operator. But in the summer time, do you think that would be reasonable office hours? No, sir.'

"The error being that said testimony was irrelevant and responsive to no issue in the case.

(3) "In that his Honor erred in charging the jury the second request of plaintiff as follows: 2d. 'It is not necessary that all offices shall have the same hours, and I leave it to you to decide what the office hours of the defendant at Ninety-Six were in July, 1910, whether they were reasonable.'

"The error being that there was no evidence in the case tending to show that the office hours at Ninety-Six at said time were unreasonable.

(4) "In that his Honor erred in charging the third request of the plaintiff as follows: 'While the occasional transmission and delivery of a telegram after office hours will not be sufficient to establish a waiver of the regulation, yet the habitual failure of the agent to observe the office hours may be considered by the jury in determining whether or not such regulations were waived.'

"The error being that there was no evidence of waiver of office hours in the case, and the charge was responsive to no issue in the case and was prejudicial to the rights of defendant.

(5) "In that his Honor erred in charging the fourth request of plaintiff, to wit: 'If a telegraph company have a regulation that one or more of its offices shall close at a certain hour, yet it may bind itself to deliver after closing time by agreement.'

"The error being that there was no allegation and no evidence tending to show an agreement on the part of the defendant to deliver the message after office hours, and the charge was responsive to no issue of law or fact in the case and was prejudicial to defendant.

(6) "In that his Honor erred in not charging the third request of defendant, to wit: 3d. 'The jury is charged that there is no evidence in this case that the suffering of the plaintiff, as alleged in the complaint, was the direct, natural

and proximate result of any negligence on the part of the defendant, and your verdict should be for the defendant.'

"The error being that said request was a correct principle of law, applicable to the case.

(7) "In that his Honor erred in not charging the eighth request of the defendant, to wit: 'The jury is charged that there is no evidence in this case tending to show that the office hours at Ninety-Six, the place at which the message was received, were unreasonable, and your verdict should be for the defendant.'

"The error being that said request contained a correct principle of law applicable to the facts of the case.

(8) "In that his Honor erred in refusing to charge the ninth request of the defendant, to wit: 'I charge you that there is no evidence of any agreement on the part of the telegraph company to deliver the telegram sued upon in this case.'

"The error being that said request contained a correct principle of law applicable to the case, and the failure to charge it was prejudicial to the rights of defendant.

(9) "In that his Honor erred in refusing to charge the 11th request of the defendant, to wit: 'The jury is charged that the undisputed evidence in this case shows that the office hours of the defendant at Ninety-Six were from eight o'clock a. m. until six o'clock p. m., and such hours are reasonable. The complaint alleges that the telegram sued upon was filed at Edgefield for transmission about six o'clock p. m., and had to go through a relay office at Augusta, Georgia. I charge you that there is no evidence that the defendant waived its regular office hours, and you should find for the defendant.'

"The error being that said request contained a correct principle of law applicable to the case, and the failure to charge the same was prejudicial to defendant.

(10) "In that his Honor erred in refusing to grant defendant's motion for a new trial upon the following grounds:

1st. "That the verdict is excessive.

2d. "That there is no testimony whatever that the suffering was the direct and proximate result of any act or delict on the part of the telegraph company.

3d. "As to office hours, there is not a scintilla of evidence to contradict the fact, which was proven on the part of the telegraph company, that the office hours at Ninety-Six, from eight a. m. to six p. m., were reasonable hours.

4th. "On the ground that there is no evidence of any waiver as to office hours at Ninety-Six."

*Messrs. John Gary Evans* and *N. G. Evans,* for appellant, cite: *Reasonable office hours at one place does not prove hours reasonable at another:* 24 Fed. 119; 71 S. C. 307, 390; 73 S. C. 521. *If no dispute as to reasonableness of office hours, the issue is one of law:* 83 S. C. 8; 71 S. C. 307. *There was no proof of waiver of office hours:* 75 S. C. 271. *A mere promise to get a message through is not a guaranty:* 75 S. C. 184; 37 Cyc. 1669; 53 S. W. 712.

*Messrs. Thurmond & Nicholson,* contra, cite: *Practically all the questions raised in this appeal are res judicata:* 90 S. C. 425; 65 S. C. 510; 78 S. C. 105. *Where the evidence is conflicting, reasonableness of office hours is for jury:* 83 S. C. 8.

The opinion in this case was filed on June 12, but remittitur held up on petition for rehearing until

August 2, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, through

the negligence of the defendant, in failing to deliver a telegram within a reasonable time.

The plaintiff and her husband lived at Ninety-Six, S. C., and worked in the factory. The husband went to Edgefield, S. C., on a bicycle, to visit his sister, Mrs. Kate Waits, and becoming suddenly ill sent the following telegram to his wife on the 17th of July, 1910: "I am sick; we will be home tomorrow on train."

He failed to arrive at home, on the 18th of July, and his wife, on that day, sent to him the following message: "When will you be home?" And in reply thereto, Mrs. Kate Waits (in whose care the telegram was addressed), on the 18th of July, 1910, at six o'clock p. m., delivered to the defendant, for transmission, the following telegram: "Jerry is on way on bicycle; left at ten." The said telegram was not delivered to the plaintiff until the next day at ten o'clock a. m., July 19, 1910, and as the result of the failure to deliver the last mentioned telegram, the plaintiff alleges, that she suffered mental anguish, from seven o'clock p. m., of 18th July, 1910, until 10 o'clock p. m. of that day, when her husband, Jerry Robertson, returned home.

The defendant interposed the defense that its office hours at Ninety-Six for receiving and transmitting messages, were from eight o'clock in the morning, until six o'clock in the evening; that the message was not delivered for transmission, until the office hours at Ninety-Six had closed; and that the same was not received at said office, until next morning, when it was promptly delivered.

The jury rendered a verdict in favor of the plaintiff, for three hundred and seventy-five dollars, and the defendant appealed upon exceptions, which will be reported.

The first question that will be considered is, whether there was any testimony tending to show, that the defendant waived the right to insist upon the office hours, mentioned in the defense.

G. M. Wilson, a witness for the defendant, and who was its agent at Ninety-Six at the time hereinbefore mentioned, thus testified: "You say your office hours were from eight to six? Yes, sir. But as a matter of fact, did you not make it a custom to receive and deliver messages after that time? If anyone would come along, we would do it; we would not do it for anyone else. As a matter of fact, if you will examine one of those telegrams here, you will see that it was received at 7:15 and sent at 7:16; and you stated that you all were in the habit of receiving and delivering messages after that time?

Mr. Evans: "He never said that.

Mr. Nicholson: "I am asking him.

"Now, frankly, were you all not in the habit of receiving and sending messages after six o'clock? Any time we were in the office, we would do it; I would; I have sent them at four o'clock in the morning. And you state that at that time, you were in the habit of receiving and delivering telegrams for people after six o'clock? We would do it.

Mr. Evans: "State whether or not the mere fact that you occasionally transmitted or received a telegram, state whether or not that was in your official capacity as affecting your office hours? No, sir. It did not? No, sir.

Mr. Nicholson: "That is a matter for the jury.

The Court: "Let him state what his rules were.

Mr. Evans: "What were the rules that you observed as to the opening and closing of your office for Western Union business? From eight a. m. until six p. m.

"Were those rules promulgated by the company and observed by you? It is the sixteen-hour law that fixes it. They are not allowed to work longer than ten hours? Ten hours and not over sixteen. That is fixed by law? That is what they told us. And everything that you did after that was simply out of your own good heart? Yes, sir. And an act of humainty on your part? Yes, sir. If you were in your office, after the office was closed, for business.

Rep.]                April Term, 1913.

and your door was closed, and someone came to you with a death message, what would you do? I would send it. You would try your best to send it? Yes, sir. Would you think you were doing wrong, or would you think you were acting as humanity would dictate to anyone?

Mr. Nicholson: "We object to that.

Mr. Evans: "What you would do would not be required of the company, but as an act of humanity?

Mr. Thurmond: "That is a matter of opinion.

The Court: "He can say whether or not the rules of the company required him to do it.

The Court: "He has already said that the rules of the company did not require him to do it, but that he would send them.

Mr. Evans: "Counsel comes in and tries to show habitual custom, they charge that it was habitual; I am asking the witness these questions so that counsel can see whether he is leading the witness.

The Court: "He knows whether he did it in obedience to the rules of the company, or whether he did it on his own responsibility.

Mr. Evans: "Would you do it merely as an accommodation? Yes, sir. And as not required by the company? They could not force me. When you sent them after that, in what capacity were you acting? In my own capacity. And out of your own good heart, as any proper man would do? I was trying to use common sense.

Mr. Nicholson: "We object to that, and my friend knows it is not competent."

It will thus be seen, that there was sufficient testimony, to require the submission of the case to the jury, upon this question, unless it should be held, that the defendant was not liable for the acts of its agent in receiving and delivering messages, *after* the regular office hours.

The agent was unquestionably acting within the scope of his employment. Therefore even if his acts were in viola-

tion of the telegraph company's instructions, this would not absolve it from liability. *Reynolds* v. *Witte,* 13 S. S. 5; *Rucker* v. *Smoke,* 37 S. C. 377, 16 S. E. 40; *Hutchinson* v. *Real Estate Co.,* 65 S. C. 75, 43 S. E. 295; *Mitchell* v. *Leech,* 69 S. C. 413, 48 S. E. 290; *Williams* v. *Tolbert,* 76 S. C. 211, 56 S. E. 908; *Brown* v. *Tel. Co.,* 82 S. C. 173, 63 S. E. 744.

The next question to be determined is whether his Honor, the presiding Judge, erred in allowing the plaintiff to introduce testimony, as to the reasonableness of the office hours at Edgefield.

In the first place, the Circuit Judge ruled that the question of reasonableness must be determined, with reference to the office hours at Ninety-Six, and not at Edgefield; and in the second place, even if there was error it was not prejudicial, as the vital question was not whether the office hours were reasonable, but whether they were *waived.*

The next assignment of error relates to the refusal of the Circuit Judge, to charge the defendant's request, that there was no evidence that the suffering of the plaintiff, was the direct and proximate result of the defendant's negligence.

The exceptions raising this question must be overruled, as the record shows that there was testimony tending to prove such fact.

The last question for consideration is, whether there was error on the part of the presiding Judge in refusing to set aside the verdict on the ground that it was excessive.

That is not a question for this Court, unless the verdict was so excessive as to manifest capriciousness or fraud, which does not appear in this case.

These conclusions practically dispose of all the questions raised by the exceptions.

Judgment affirmed.

August 2. PER CURIAM. This is a petition for a rehearing upon two grounds, which will be considered in regular order.

First Ground. The defendant, in its answer, interposed the following as a defense: "That the office hours of the defendant company at Ninety-Six, for the conduct of business, are from eight o'clock in the morning, until six o'clock in the evening, and if any delay occurred in the delivery of the message complained of, it was by reason of the fact, that said message was not offered for transmission, until after the office at Ninety-Six had closed, and the same was not received at Ninety-Six, until next morning, and was promptly delivered.

The allegation as to the office hours at Ninety-Six was put in issue, without a formal denial.

The plaintiff introduced testimony for the purpose of showing, that the defendant's office hours had been changed, by waiving its right to insist upon them, on numerous occasions prior to the time, when the message herein was delivered for transmission.

The operator at Ninety-Six, thus testified: "Now, frankly, were you all not in the habit of sending messages, after six o'clock? Any time we were in the office we would do it; I would; I have sent them at four o'clock in the morning. And you state that at that time, you were in the habit of receiving and delivering telegrams for people, after six o'clock? We would do it."

If the office hours at Ninety-Six were thus changed, then the defendant could not escape liability by showing, "That the office at Ninety-Six was closed, at the time the message was filed in Edgefield for transmission; that the telegram never reached Ninety-Six until 8 o'clock Tuesday morning; that the undisputed testimony shows, that the agent at Edgefield stated to Mr. Ouzts, the sender of the message, that the office hours at Ninety-Six, were from 8 o'clock a. m. until 6

o'clock p. m., and that the message would have to lie over in Augusta, Ga., the relay office."

It seems to us, that appellant's counsel has misconceived the object, for which the testimony was introduced. It was not for the purpose of showing waiver, *in this particular case,* but that the office hours had been *previously* changed, in so far as the *general public* were concerned, by habitually disregarding them.

The verdict shows that this fact was established, to the satisfaction of the jury.

This ground can not be sustained.

Second Ground. This ground is based upon the assumption, that the Court failed to consider the fifth and eighth exceptions.

It is true, these exceptions were not considered specifically, but the Court, in concluding its opinion, said: "These conclusions practically dispose of all the questions raised by the exceptions."

The fifth exception was as follows: "In that his Honor erred in charging the fourth request of plaintiff, to wit: 'If a telegraph company have a regulation, that one or more of its offices shall close at a certain hour, yet it may bind itself to deliver, after closing time, by agreement.' The error being, that there was no obligation, and no evidence tending to show an agreement, on the part of the defendant to deliver the message after office hours, and the charge was responsive to no issue of law or fact in the case, and was prejudicial to defendant."

In charging the said request, his honor, the presiding Judge, said: "Of course, I do not mean to express any opinion, as to whether there was any agreement; if there was an agreement, you will have to find it from the testimony; if there is no evidence of any agreement, then that would not apply."

The eighth exception was as follows: "In that his Honor erred, in refusing to charge the ninth request of the defend-

ant, to wit: 'I charge you that there is no evidence of any agreement, on the part of the telegraph company, to deliver the telegram sued upon in this case.' The error being, that said request contained a correct principle of law applicable to the case, and the failure to charge it, was prejudicial to the rights of defendant."

In regard to the ninth request, his Honor, the presiding Judge, said: "Now, as to the ninth request, they ask me to tell the jury, that there is no evidence on a certain point. I do not remember what the testimony was; I cannot keep it all in my mind.

Mr. Evans: "Is that the one as to the agreement?

The Court: "Yes, sir.

Mr. Evans: "That is just in reply to their request, and there was no such agreement.

Mr. Nicholson: "We submit there was such an agreement.

The Court: "I will decline this ninth request, because that is a question for the jury. I will tell the jury, when it comes to the question of an agreement to deliver the message out of office hours, it is incumbent on the plaintiff to show, that there has been such an agreement, and unless the plaintiff shows you by the preponderance of the testimony that there was such an agreement, then you will have to ignore it; if you do not find any evidence of a special agreement to deliver it out of the office hours, just disregard that; and if you find that the telegram was received outside of office hours, the company is not bound to deliver it, except in office hours, unless the company made a special agreement to deliver it after office hours, or unless the company had waived the requirements as to office hours."

While there was no evidence of a special agreement, as to this telegram, and the Circuit Judge erred in not so charging, yet we are satisfied that the error was not prejudicial, for the reason that, as we have shown, there was testimony tending to show a general waiver of the office hours. In view of this fact, and the explicit instructions above quoted,

to the effect that the burden was on the plaintiff to prove such agreement, and that if she had failed to do so, or there was no evidence of it, the jury must disregard that contention, we are satisfied that the error was harmless.

It is the judgment of this Court, that the petition be dismissed, and the order heretofore granted staying the remittitur be revoked.