## 8972

### BLACK v. THE STATE CO.

#### (83 S. E. 1088.)

LIBEL AND SLANDER. PRINCIPAL AND AGENT. SCOPE OF AUTHORITY. RATIFICATION. PRIVILEGED COMMUNICATIONS. LIBELOUS WORDS. CRITICISM OF PUBLIC AFFAIRS. MALICE. DAMAGES. PUNITIVE DAMAGES. CHARGE. ISSUES FOR JURY. NEW TRIAL. NEWLY DISCOVERED EVIDENCE. DISQUALIFICATION OF JURORS.

1. A reporter assigned to write up proceedings growing out of an election, who slanders another by threatening to write him up if he does not cease influencing voters, is acting within the scope of his authority, though he may have violated his instructions, and the newspaper is liable for his acts.

2. There being testimony tending to sustain the material allegations of the complaint, the direction of a verdict for defendant, and motion for new trial after verdict, on ground that it was against the charge, and unsupported by the testimony, were properly refused.

3. All elements of damage alleged in complaint need not be proven.

4. Publications tending to impeach a plaintiff's honestly, injure his reputation, and expose him to public hatred, contempt, ridicule and obloquy, necessarily tend to injure his business.

5. The definition that "malice," in its broad sense, and a legal sense applicable to slander and libel, imports that state of mind or feeling which prompts an individual to intentionally do a wrongful act, whereby another is or may be injured, without just cause or excuse, *held* not prejudicial to defendant.

6. The subsequent ratification by principal of his agent's act, in the course of his employment, is evidentiary matter which need not be alleged in order to lay foundation for proof thereof.

7. It is unnecessary to allege evidentiary matter in order to lay the foundation for proof thereof.

8. A charge should be considered as a whole, and not in isolated excerpts.

9. A charge that if the jury find the plaintiff was threatened by defendant, and warned that defendant would write him up in a newspaper and ruin his business, and that in pursuance of such threats, defendant did attack the plaintiff in the newspaper, and the attack was malicious and untrue or exceeded the limits of criticism in the discussion of public affairs, and the plaintiff was unjustly exposed to obloquy and disgrace, then the verdict should be for the plaintiff, when considered in connection with the entire charge, *held* free from error.

10. A charge "that fair and honest criticism in matters of public concern is privileged, but the privilege is limited strictly to comments and criticism, and does not protect false statements, unjust infer-

ences, imputation of evil motives or criminal conduct and attacks upon private character, the publisher being responsible for the truth of what he alleges to be facts," taken in connection with entire charge, sustained.

11. Charge as to punitive damages in action for libel, in connection with entire charge, approved, and does not warrant the inference that the jury might give punitive damages for mere negligence.

12. The question whether or not a publication was privileged as a fair and honest discussion of public affairs, or libelous, was properly submitted to the jury.

13. A request to charge ignoring grounds for recovery, and predicating the right to recover upon only one of several grounds, properly refused.

14. The appellant must show prejudice arising to him from the refusal of Court to charge an abstract proposition of law quoted from former decisions of the Court.

15. Whether a publication was qualifiedly privileged was a question for the jury.

16. A requested charge invading the province of the jury is properly refused

17. A requested charge commenting on the facts is properly refused.

18. No error to refuse, in action for libel, a request limiting recovery to nominal damages, even if there is no evidence of substantial or special damages.

19. Refusal of a request to charge, that even if the jury should find that the publications in question were libelous, yet it is necessary for the jury to further find that publisher did not act in good faith under the *bona fide* belief that he was performing a moral duty owed the public was not prejudicial error.

20. Where the jury is not misled or misunderstood the issues, an exception to refusal of a request to state the issues in a particular way, not sustained.

FOOTNOTE.—Privileged communications a question of mixed law and fact, see note in 10 A. & E. Ann. Cases 1152, 1153. Privilege of communications concerning one who has made statements derogatory to a candidate for office, see note in 43 L. R. A. (N. S.) 323. Existence of actual malice as question of fact, see note in 10 A. & E. Ann. Cas. 1154. Significance of title or headline in determining whether an article is libelous, see note in Ann. Cas. 1914d, 96. Liability of corporation for libel or slander, see note in 9 A. & E. Ann. Cas. 443, 17 *Ib.* 622, 21 L. R. A. (N. S.) 653. Liability of master or principal for libel or slander by servant or agent, see note in 21 A. & E. Ann. Cas. 343, and 43 L. R. A. (N. S.) 37, and 48 L. R. A. (N. S.) 62. Functions of Court and jury in allowance of punitive damages in libel or slander, see note in 14 A. & E. Ann. Cas. 822.

21. After a verdict has been reduced in accordance with an order of the trial Court, the Court will not review the finding of the trial Judge as to whether or not it was excessive.

22. The exercise of the discretion of the trial Judge in refusing a new trial on the ground of newly discovered testimony alleged to show disqualification of juror, or that the verdict was influenced by passion or prejudice, will not be interfered with unless the Court is satisfied of prejudicial error by the trial Court in regard thereto.

Before SEASE, J., Columbia, March, 1913. Affirmed.

Action for libel brought by E. O. Black against The State Company. The complaint is set out in opinion on former appeal, in 93 S. C. 467, 77 S. E. 51, which see, in connection with the opinion on this hearing, for statement of facts.

The charge, remarks of the trial Court in refusing a new trial, and exceptions were as follows:

Mr. Foreman and gentlemen of the jury, I feel it my duty to call to your attention the fact that you are trying the case of E. O. Black against The State Company. You are the judges of the credibility of the witnesses and the force and effect to be given to their testimony. I might say, gentlemen, as far as the facts are concerned, you are the Supreme Court, and you would deport yourselves as judges; therefore, you would approach the consideration of the matters that are now being submitted to you in a judicial frame of mind, remembering that you have no enemies to punish and no friends to reward. Hold the scales of justice evenly balanced between the plaintiff and the defendant. That is what you are sworn to do. You must try this case according to the law as I give it to you as applied to the facts as you understand them to be. Therefore, if you have any extraneous or improper matters before you you are to discard them, ignore them, and make an honest effort to well and truly try the issues that are submitted to you for your consideration.

Your decision on matters of fact is final, and there is no appeal from such decision. When you have given the case your honest, conscientious consideration and reached what you conceive to be a proper verdict honestly no man can criticise you. You are to be untrammeled in the performance of your duty.

Now, having said that much, gentlemen, you want to know what are the issues that are submitted to you. I charge you, gentlemen, that all persons are equal in the Courts of law, and they all have the same rights under the law.

The plaintiff is a natural person. The defendant is also a person, but the defendant is made a person by artificial process, to wit, by enactment of the legislature. It is a corporation.

Corporations and individuals should be given the same fairness in the trial of a case that might arise between them, between the person on the one side and the corporation on the other.

Corporations, gentlemen, cannot act except through agents; and the corporation known as The State Company cannot act except through its editors, reporters and other agents, business manager, president, vice president, and so forth. The agents of a corporation, within the scope of their authority as agents, bind the corporation to the act of the agents as the act of the corporation itself.

Now, you would approach the trial of the differences that exist between the contention of the plaintiff and the contention of the defendant as you would try a case between anybody else or any other persons. You are arbiters, as it were. And you would try the case just the same as if you were settling the differences between two neighbors that had appealed to you and some of your other neighbors to arbitrate some differences between them.

The plaintiff comes into Court, and he has a right, any plaintiff who feels aggrieved has a right to come into Court

and seek to remedy or right his alleged grievances; and he alleges in his complaint—and the complaint and answer frame the issues that this Court with the jury are to try—and he alleges that certain publications were made by the defendant which damaged him in his reputation, standing and business, and things of that kind. In other words, it is a suit for what is known as a libel suit. And these allegations in his complaint that it is material for me to call to your attention are, after setting forth the alleged publications, he alleges that The State editorial in connection with the locals on page one of said paper, having reference to it, directs public attention to the plaintiff herein, E. O. Black, and denominates his method of fighting the said Wilson as unfair and discreditable, and that the said libelous publication was malicious and false, and tends to impeach the honesty, integrity and reputation of the plaintiff herein, and, therefore, to expose him to public hatred, contempt and ridicule and obloquy and to injure him in his business and occupation.

He alleges, further, that the said publications set out in this complaint were wilful, malicious and false, and tends to impeach the honesty, integrity and reputation of the plaintiff, to injure his character and reputation, and to expose him to public hatred, contempt, ridicule or obloquy, and to injure his business or occupation, and by reason thereof the said plaintiff has been damaged in the sum of fifty thousand dollars.

Now, the editorials and the publications or communications—because a publication is a communication by the publisher, from the publisher to the public—he alleges, having set these out, he makes these allegations about them as I have called your attention briefly to. The editorials, or rather the publications, have been read in your hearing several times and I do not deem it necessary to read them again, even if they are in the complaint.

Now, the answer has a first defense. As I understand the first defense to mean, in effect a general denial of the material allegations of the complaint.

The second defense, while it is somewhat lengthy, may be summed up briefly as follows: "That the publications alleged in the newspaper of this defendant, in so far as they referred to plaintiff, were made by defendant in the fulfillment of its duty to its subscribers and to the public as an honest report and criticism of the methods used by the plaintiff and others, and with reference to their action in a matter of vital public interest and concern, and were made by defendant upon reliable information, with an honest belief in their truth and without malice or intention to injure the plaintiff or the other brother of the said Fingal C. Black."

And the third defense, briefly stated, reading from the answer, they allege in the answer: "That the statements set forth in the publications in the newspaper of this defendant, as alleged in the complaint, in so far as they refer to the plaintiff, contain a true statement of the things done by plaintiff."

For a fourth defense, all of which I will read, the defendant says: "That the statements made in the publications in the newspaper of this defendant, as alleged in the complaint, in so far as they referred to plaintiff, were made by defendant upon reliable information furnished to defendant and honestly believed by defendant to be true, for the sole purpose of performing its public duty of furnishing the news to its subscribers and readers and of making a fair and honest editorial comment upon the action of the plaintiff on a matter of general public concern and interest."

I charge you, gentlemen, as a matter of law, that before the plaintiff can recover at your hands he must satisfy you by the preponderance of the evidence, either his testimony or the testimony of others, either for the defense or for the

plaintiff, that his contentions set out in his complaint are true. He is not called upon to prove it beyond a reasonable doubt, but by the preponderance of the evidence. And the preponderance of the evidence means this—the greater weight of the testimony; not necessarily means the greater number of witnesses. For example, you take an imaginary scale or balance and in one side place all the testimony in favor of the contention of the plaintiff and in the other side the testimony against his contention; and if it stand evenly balanced he cannot recover, because there is no preponderance, and there is no preponderance in his behalf to sustain his contention. But if his side of the balance in your mental picture predominates in the least, then it can be said that his contentions have been made out because there lies the preponderance.

This, gentlemen, is a suit for libel, generally known as a suit for libel. Therefore, you would like to know briefly what a libel is, and I quote from the dissenting opinion in this case from the Supreme Court in order to get the definition, a complete definition of libel. Of course, the majority opinion of the Supreme Court governs this Court: "A libel is malicious defamation, expressed either by writing or printing, or by signs, pictures, effigies, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty or integrity or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business or occupation."

I charge you, gentlemen, as a matter of law, that a man's reputation, standing, character and things of that kind are his property just as much as his personal goods and chattels or his real estate; and a man who unlawfully injures that possession is liable in damages under the law in a proper case.

Just in this connection, counsel referred to section 214 of the Code Civil Proc., and I desire to read that section and also the following section, which is the law in this case, although it refers mainly—I mean to say, which is a part of the law of this case—referring mainly, though, to pleadings. Section 214 of the new Code Civil Proc.: "In an action for libel or slander it shall not be necessary to state, in the complaint, any extrinsic facts, for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose; but it shall be sufficient to state generally that the same was published or spoken concerning plaintiff; and if such allegation be controverted the plaintiff shall be bound to establish, on trial, that it was so published or spoken."

That means, gentlemen, that you must be satisfied by the preponderance of the evidence that the alleged libel was written of and concerning the plaintiff in this case.

Section 215: "In the action mentioned in the last section, defendant may, in his answer, allege both the truth of the matter charged as defamatory, and any mitigating circumstances, to reduce the amount of damages; and, whether he prove the justification or not, he may give, in evidence, the mitigating circumstances."

That, of course, is only read in connection with the other section; and, as I indicated, is more a matter of pleading than anything else.

I charge you, gentlemen, that this suit is for damages; and the kind of damages claimed in the pleading is what is known as actual or compensatory damages, and also punitive damages.

Actual damages means compensatory damages to compensate the person for his injury or damage. Punitive damages has nothing to do with actual damages, but is allowed by way of punishment for the unlawful invasion of the rights of a person. As an example, it is sometimes called exemplary damages, as. an example to others.

You will notice that in the definition of libel that I charge you it starts off with "malicious defamation." Therefore, you will note that you must understand what malicious or malice is. You have an idea in everyday common affairs what malice means, but the broad legal sense of the word is the wilful or intentional doing of a wrongful act without just cause or excuse. I copied one of the definitions—had an opportunity to copy one of the definitions of malice from a law book: "The term malice in its broad sense imports that state of mind or feeling which prompts an individual to do an act whereby another is or may be injured wrongfully and intentionally, without just cause or excuse."

The defendant being a corporation and having to act through agents it becomes necessary for me to instruct you briefly concerning the law of agent and principal. Generally speaking, the agent, his conduct and his acts, within the scope of his authority, is binding on the principal. I charge you, further, that the acts, all acts of the agent, whether within the scope of his authority or not at the time, if his acts are ratified subsequently by the principal, then the principal makes those acts the acts of themselves or itself.

With that, gentlemen, I take up the requests to charge. I take up the plaintiff's first. I should instruct you, gentlemen, and the requests cannot give you, all the law applicable to a case in one proposition. Therefore, you will bring your best attention to the charge of the Court, seeking to understand the whole, and remembering that the propositions submitted to you for your consideration are not intended to be contradictory, but are intended to modify or qualify one or the other:

The plaintiff requests, first:

"1. If the jury find that the written words in this case tends to diminish the respectability of the plaintiff to whom they relate and to expose him to disgrace and obloquy, although they do not impute the commission of a crime,

they are libelous and actionable although no special damages are alleged or proven."

I charge you that, gentlemen, in connection with what I have already charged you along the line that the plaintiff must establish by the preponderance of the evidence that the defamatory publication was of or concerning him.

"2. In determining whether words are libelous, they are to be given their ordinary and popular meaning, and if they are susceptible of two meanings, one libelous and the other innocent, the former is not to be adopted and the latter rejected as a matter of course, but it must be left to the jury to be determined in what sense they are used."

I charge you that, gentlemen.

"3. I charge you that written words tending to diminish the respectability of a person to whom they relate, and to expose him to disgrace and obloquy, although they do not impute the commission of a crime, are libelous and actionable, although no special damages are alleged or proven."

I charge you that, gentlemen, in connection with what I have already said in regard to malice and the duty that the law places upon the plaintiff to show malice, under the definition, of course, of malice that I have given to you.

"4. I charge you that if, you believe from the evidence that the publications attributed to the defendant were published with relation to the plaintiff, and if you further believe that said publications were libelous—that is, that they tended to diminish the respectability of the plaintiff and to expose him to disgrace and obloquy, although they did not impute the commission of a crime—then your verdict should be for the plaintiff."

I charge you that, gentlemen, modified by what I have already charged you and what I will charge you hereafter. from the requests of the defendant.

"5. I charge you that 'in a legal sense, malice, as an ingredient of actions for slander or libel, signifies nothing more

than a wrongful act, done intentionally, without just cause or excuse.' "

I charge you that.

"6. If the jury find that the plaintiff was threatened by the defendant, and warned that defendant would write him up in The State newspaper and ruin his business, and in pursuance of that threat did attack the plaintiff and the attack was malicious and untrue or exceeded the limits of fair criticism in the discussion of public affairs and the plaintiff unjustly exposed to obloquy and disgrace, then the verdict must be for the plaintiff."

I charge you that, gentlemen.

"7. I charge you that it is usually for the jury to say when criticism and statements cease to be fair and honest and become libelous."

I charge you that, gentlemen.

"8. I charge you that fair and honest criticism in matters of public concern is privileged, but the privilege is limited strictly to comments and criticism and does not extend to protect false statements, unjust inferences, imputation of evil motives or criminal conduct and attacks upon private character, the publisher being responsible for the truth of what he alleges to be facts."

I charge you that, gentlemen, modified, of course, and qualified by what I have already charged you and what I will charge you.

"9. I charge you that the Constitution of the United States and the State Constitution guarantee the right of freedom of speech and liberty of the press. The term 'liberty of the press' consists in a right in the conductor of a newspaper to print what he chooses without any previous license, but subject to be held responsible therefor to the same extent that any one else would be responsible for the publication."

I charge you that, gentlemen.

"10. I further charge that the subject in relation to which a communication was made may be privileged, yet the communication made upon that subject may not be privileged. If the restraints and qualifications imposed by law upon the publicity to be given such communications be disregarded, the communication is not privileged. If reasonable bounds be exceeded in making the communication or if the communication be made knowing it to be false malice might be inferred which would destroy the privilege."

I charge you that, gentlemen.

"11. If you find under the law and the facts in this case that the plaintiff is entitled to recover damages, in addition to any actual damages which may have been proven, you may give what in law is known as exemplary or punitive damages—that is, damages that may be punishment to the defendant and an example to others."

I charge you that, gentlemen.

Just here, gentlemen, I desire to take up one of the requests of the defendant out of order; and before I read that request I instruct you that privileged communications are matters for the jury after the Court has instructed you what privileged communications are under the law. In other words, you are to decide whether or not the communications or publications complained of were privileged. And for your guidance I charge you this seventh request of the defendant:

"7. A communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or proper cause. When so made in good faith the law does not imply malice from the communication itself as in ordinary cases. Actual malice must be proved before there can be a recovery.

I charge you that, gentlemen, recalling to your minds what I defined to you as malice.

Now, going back and taking up the requests of the defendant in order. Some of these, gentlemen, I will have

to charge with modifications and some of them, of course, I
will have to refuse.

"1. The plaintiff having admitted in his testimony that
the only threat of any kind made against him or his business
was by one Seats, a reporter, and there being no testimony
to show that he had authority to indicate what publications
would be made in the paper or to indicate what would be the
policy of the paper with reference thereto, the defendant is
not legally responsible for any such threats or warnings,
even if seriously made by the said Seats."

You will notice, gentlemen, that this is a suit for an
alleged libelous publication, and, in the main, it is not a suit
for threats or warnings. I charge you that with that sug-
gestion or that comment, and also recalling to your minds
what I said about principal and agent.

"2a. This case presents two distinct questions of fact for
the determination of the jury. The first is whether the pub-
lications in question are libelous or not libelous. If the jury
conclude, under the charge of the Court, that the publica-
tions are libelous, then they must, before they can find a
verdict for the plaintiff, find the further fact from the pre-
ponderance of the testimony, to wit, that the publications
were accompanied or caused by express or actual malice."

I charge you that, gentlemen.

"3a. In order for the jury to find that the publications
were libelous, they must first find that an agent of the
defendant, for whose actions defendant is legally respon-
sible, threatened and warned the plaintiff away from the
voting precincts or made the threat that if the plaintiff did
not leave the voting precincts and cease his efforts to influ-
ence voters against the candidate, Wilson, that the defend-
ant would write up the plaintiff in its newspaper and ruin
his business, and that the threat was made seriously with
the intention to actually follow it up with the publications
in question, and further find, from the preponderance of
the testimony, that it was in pursuance of these threats and

warnings, that the publications complained of subsequently appeared in defendant's paper."

I charge you that, gentlemen, in connection with, and modified by, what I have already charged you in regard to agent and principal.

"3c. And before the jury can conclude that the publications were libelous they must find from the preponderance of the testimony that the publications were not fair and honest criticisms and strictures upon the conduct of the plaintiff in a matter of public interest."

I charge you that, gentlemen.

"4a. In determining whether words are libelous they are to be given their ordinary and popular meaning; and if they are susceptible of two meanings, one libelous and the other innocent, the former is not to be adopted and the latter rejected as a matter of course, but it must be left to the jury to determine in what sense they were used."

I charge you that, gentlemen. I think I have already charged you that mainly in a request by the plaintiff.

"4b. If the jury conclude that the publications were criticisms upon the conduct of plaintiff in a public matter—that is, expressions of opinions as to his conduct and not a defamatory charge against the plaintiff himself, then they shall find for the defendant."

I charge you that, gentlemen.

"6. The plaintiff cannot recover unless he proves by the preponderance of the testimony that the defendant was actuated by express malice or malice in fact in making the publications—that is, he must show by the preponderance of the testimony that the defendant made use of the occasion to gratify anger, malice or some feeling of personal ill will, spite or hatred towards the plaintiff, or that he must show that the defendant made the publications for an indirect, wrongful or wicked motive generally. If the publications are privileged, the plaintiff bears the burden of overcoming

the privilege by showing actual or express malice on the part of the defendant."

I charge you that, gentlemen.

"8. 'A legal defense to an action for defamation.—It is a legal defense to an action for defamation if satisfactorily proven, that the circumstances under which the defamatory words were published were such as to render it right and proper that the defendant should plainly state what he honestly believed to be the plaintiff's character—to speak his mind fully and freely concerning him. In such cases the communication is said to be privileged; and although it may be false, still its publication on such an occasion is excused for the sake of the common convenience and welfare of society at large.' "

I charge you that, gentlemen, in connection with what I have already charged you.

"8½. 'The evidence should raise a probability of malice, and be more consistent with its existence than its absence. When the occasion is privileged the presumption arises that the publication was *bona fide* and without malice, and it is incumbent on plaintiff to overcome this presumption. If, from defendant's point of view, strong words seem to be justified, he is not to be held liable unless the jury can say that what he published was to some extent, at least, inconsistent with the theory of good faith.' "

"11. The jury cannot consider any damages that may have resulted to the corporation known as the Black & Coulter Company, in which plaintiff was interested and of which he was an officer or any loss suffered by that corporation as a result of the publications."

I charge you that because of the simple fact that this is a suit on the part of an individual, E. O. Black, and not on the part of the corporation called the Black & Coulter Company.

"14. Under the law of this State, it is a complete defense if the jury conclude that the charges contained in

the article in question were true, and if the jury so conclude, their verdict shall be for the defendant."

I charge you that, gentlemen, in connection with what I have already charged you.

"15. If the jury conclude that the acts or facts charged against the plaintiff in the publications were true as charged, then they must find that the publications were not libelous, because mere criticisms and expressions of opinion upon the public acts of plaintiff, in which the general public was interested, unless the jury go further and find from the preponderance of the plaintiff's testimony that such publications were caused or accompanied by express or actual malice, as I have heretofore defined that term to you."

I charge you that, gentlemen.

Refusing motion for new trial, the Judge said:

"The question arises, in the first place, was there any testimony tending to sustain the allegations of the complaint as I have just read them from the opinion of the Supreme Court in this case. And I think that is the beginning of the crucial test in this case.

"There was testimony on that point direct by the plaintiff himself involving, of course, the acts and the statements of an agent of the defendant. I cannot, therefore, hold that there was no testimony to sustain the allegations of the complaint.

"Now, as to whether it was proven, the jury was entirely the judge of the credibility of the witnesses and the force and effect to be given to their testimony. And I cannot say that the finding of the jury in finding for the plaintiff was against the preponderance of the testimony.

"Now, then, that brings me to the question as to whether or not there should be a new trial on the ground of after-discovered evidence. And I do not see much difference in the statements brought forward as grounds for a new trial than what was actually testified to by some witnesses.

"Now, as to the jury, of course, the administration of justice must, and should, be above suspicion. That is, suspicion of any improper motive. It would be a very serious matter to allow a verdict to stand if a juror was prejudiced and allowed that prejudice to govern him in the consideration of the case. But I cannot come to that conclusion in this case as to the juror, Funderburk. Necessarily, where a strong newspaper like The State is published, strong editorials, things of that kind, necessarily some people's feelings will be aroused, hurt, as it were, and strong force always meets with antagonisms and resistance. So, I cannot grant a new trial on that ground, because I think that jury was as fair and unprejudiced a jury as we could get. Even if I would grant a new trial on that ground there would be no assurance that we would have a fairer trial than we have already had in regard to that fact, that matter.

"Now, the serious question that presents itself to me is the size of the verdict, and that is the fourth ground for asking for the verdict to be set aside. And if I thought, was convinced, that the size of the verdict in this case, that it was a verdict by caprice and passion, I would not hesitate to set it aside on that ground. But I must take into consideration that jurors are not accustomed to deciding on these matters and punishment, and I believe the greater part of that verdict was rendered by way of punishment, and that is a matter that has a wide scope, it is true.

"Now, as to the actual damages. I do not think that there was much actual damages. It would be speculative and it would be hard to tell what its effect would be on a man's business. But there was no testimony, unfortunately, for that jury as to the wealth of the defendant. There was no argument on that ground. Punishment varies according to the temperament sometimes of the man on the jury who is inflicting the punishment. For instance, I have seen distinguished Judges pass very different sentences on the same offense. I remember one distinguished Judge passing

a $10 sentence on a man for shooting another man through the body with a pistol. Another Judge would no doubt have put him in the penitentiary for ten years, or might have done so. I am not making any criticism of that Judge.

"So I have no hesitation in coming to the conclusion that the verdict is largely in excess of what it ought to be, gentlemen. I am here to see that justice is done. I am going to refuse to grant a new trial. The matters of law that were submitted are matters for the Supreme Court, but when it comes to a matter of punishment I must exercise my own judgment.

"A new trial is granted unless the plaintiff within a reasonable time remit on the record the sum of $15,000, reducing the verdict to $5,000. And I think that is sufficient punishment, because the offense was not, as I see it, the gravest offense that could be committed by a newspaper in the publication of a communication in regard to a man. And that is the order of the Court.

"They have got, of course, reasonable time. You may make it 15 days in which to determine whether they will accept a new trial or accept a verdict of $5,000."

Thereafter the defendant appealed on the following exceptions:

1. Because his Honor erred in allowing the plaintiff to testify, over the objection of the defendant, to certain threats claimed to have been made by one A. H. Seats, a reporter of the defendant's paper, to the effect that if plaintiff and his brother, J. E. Black, did not leave the polls and cease their efforts to defeat C. C. Wilson, he (A. H. Seats) would write them up in The State paper and destroy their business, and to further testify: "You had better leave anyway, because I am going to give you the devil," etc.; and further erred in ruling that such threats were in the apparent authority of the agency of the said A. H. Seats.

29—99

The error being that there was no evidence which would justify the inference that A. H. Seats had any authority to bind the defendant corporation by any such declarations or threats, and there was no evidence that any such declarations or threats were in the apparent scope of his authority as an agent of the defendant.

2. Because his Honor erred in allowing the witness, John E. Black, to testify, over the objection of the defendant, to certain threats claimed to have been made by one A. H. Seats, a reporter on the defendant's newspaper, to the effect that he (A. H. Seats) would write up the plaintiff and John E. Black in The State newspaper and destroy their business, unless they ceased their efforts to defeat Charles C. Wilson at the polls; and further erred in ruling that such declarations or threats were within the apparent scope of the authority of the said reporter, Seats.

The error being that there was no evidence to justify the inference that it was within the apparent authority of the said reporter to bind the defendant corporation by such threats or declarations.

3. Because his Honor erred, for the reasons therein stated, in refusing defendant's motion for the direction of a verdict upon the following ground:

"(1) Because there is an entire failure of evidence to support the material allegations of the complaint."

4. Because his Honor erred, for the reason therein stated, in refusing defendant's motion for the direction of a verdict upon the following ground:

"(2) Because the entire evidence admits only of the inference that no threats or warnings were made to or against the plaintiff by any duly authorized agent of the defendant, for whose action the defendant is legally responsible."

5. Because his Honor erred, for the reasons therein stated, in refusing defendant's motion for the direction of a verdict upon the following ground:

"(3) Because, under the decision of the Supreme Court, there is no evidence that the defendant threatened to destroy plaintiff's business, and in pursuance of that threat, falsely and maliciously made the publication in its paper, and, in the absence of such evidence, the Court must rule as a matter of law that the publications are not libelous."

6. Because his Honor erred, for the reasons therein stated, in refusing defendant's motion for the direction of a verdict upon the following ground:

"(4) Because the entire testimony shows that all of the facts or acts charged to plaintiff, in the publications referred to, were true and the comments or criticisms made by the defendant upon these acts or facts are not libelous, being merely criticisms upon the public acts of plaintiff, in which the general public were interested."

7. Because his Honor erred, for the reasons therein stated, in refusing defendant's motion for the direction of a verdict upon the following ground:

"(5) Because there is no allegation or evidence that the. publications had any reference to or effect upon the plaintiff's business."

8. Because his Honor erred, for the reasons therein stated, in refusing defendant's motion for the direction of a verdict upon the following ground:

"(6) Because upon the uncontradicted evidence the publications were privileged and there is no evidence of any express or actual malice to overcome the privilege."

9. Because his Honor erred in charging the jury as follows, to wit:

"You will notice that in the definition of libel that I charged you it starts off with 'malicious defamation;' therefore, you will note that you must understand what malicious or malice is. You have an idea in everyday common affairs what malice means, but the broad legal sense of the word is the wilful or intentional doing of a wrongful act without just cause or excuse. I copied one of the definitions, had

an opportunity to copy one of the definitions of malice from a law book: 'The term malice in its broad sense imports that state of mind or feeling which prompts an individual to do an act whereby another is or may be injured wrongfully and intentionally, without just cause or excuse.' "

The error being:

a. That the only question of malice that the jury had to pass upon was the existence of actual malice or malice in fact (as distinguished from what is known as legal malice or malice in law) to rebut the defense of privilege communication, and his Honor, therefore, instructed the jury that the existence of legal malice would rebut the privileged communication, whereas, although legal malice is inferred in law from a libelous publication, yet there must be actual malice to overcome a privileged occasion or privileged publication.

b. This charge was inconsistent with the defendant's sixth request, which was subsequently charged, and which required plaintiff to prove that the defendant was actuated by malice in fact, as contrasted with malice in law, if the jury should find that the publications were privileged.

10. Because his Honor erred in charging the jury as follows, to wit:

"I charge you further that the acts, all acts of the agent, whether within the scope of his authority or not at the time, if his acts are ratified subsequently by the principal, then the principal makes those acts the acts of themselves or itself."

The error being that there was no allegation or evidence that the acts of the agent in this case were subsequently ratified by the defendant principal, and it was error to instruct the jury that they could so find.

11. Because his Honor erred in charging the plaintiff's first request, as follows, to wit:

" 'If the jury find that the written words in this case tends to diminish the respectability of the plaintiff to whom

they relate and to expose him to disgrace and obloquy, although they do not impute the commission of a crime, they are libelous and actionable, although no special damages are alleged or proven.'

"I charge you that, gentlemen, in connection with what I have already charged you along the line that the plaintiff must establish by the preponderance of the evidence that the defamatory publication was of or concerning him."

The error being:

a. That his Honor thereby excluded the defendant's defense of privileged communication, and

b. That his Honor thereby excluded the defendant's defense that the publications were true, and

c. That said charge was erroneous under the decision of the Supreme Court in this cause because it did not require plaintiff to establish that the defendant had made prior threats to write up plaintiff and destroy his business, and that the publications were subsequently made pursuant to such threats and were maliciously false and intended and actually did result injuriously to plaintiff.

d. This was absolutely inconsistent with defendant's request 3a, which was subsequently charged and so misled and confused the jury.

12. Because his Honor erred in charging the plaintiff's fourth request, as follows:

"4. I charge you that if you believe from the evidence that the publications attributed to the defendant were published with relation to the plaintiff, and if you further believe that said publications were libelous—that is, that they tended to diminish the respectability of the plaintiff and to expose him to disgrace and obloquy, although they did not impute the commission of a crime, then your verdict should be for the plaintiff."

"I charge you that, gentlemen, modified by what I have already charged you and what I will charge you hereafter from the requests of the defendant."

The error being:

a. That his Honor thereby excluded the defendant's defense of privileged communication, and

b. That his Honor thereby excluded the defendant's defense that the publications were true, and

c. That said charge was erroneous under the decision of the Supreme Court in this cause because it did not require plaintiff to establish that the defendant had made prior threats to write up plaintiff and destroy his business, and that the publications were subsequently made pursuant to such threats and were maliciously false and intended and actually did result injuriously to plaintiff.

d. This was absolutely inconsistent with defendant's request 3a, which was subsequently charged, and so misled and confused the jury.

13. Because his Honor erred in charging plaintiff's fifth request, as follows:

"5. I charge you that 'in a legal sense, malice, as an ingredient of actions for slander or libel, signifies nothing more than a wrongful act, done intentionally, without just cause or excuse.'"

"I charge you that."

The error being:

a. That the jury had nothing to do with the question of "malice" in a legal sense, since if the publications were libelous, the law infers that they were made maliciously, and the only question of malice for the jury was whether there was express malice or malice in fact, which would rebut or overcome the defense of privileged communication, which means personal anger, personal malice, or personal ill will, spite or hatred, and the charge was, therefore, erroneous.

b. That this was inconsistent with the defendant's sixth request, subsequently charged, and which gave the true and correct definition of malice with which the jury was concerned, and, therefore, misled and confused the jury, so that it could not determine what character of malice would

rebut or overcome the defense of privileged communications, and allowed them to conclude that malice in a legal sense would do this.

14. Because his Honor erred in charging the plaintiff's sixth request, as follows:

"6. If the jury find that the plaintiff was threatened by the defendant, and warned that defendant would write him up in The State newspaper and ruin his business, and in pursuance of that threat did attack the plaintiff and the attack was malicious and untrue or exceeded the limits of fair criticism in the discussion of public affairs and the plaintiff unjustly exposed to obloquy and disgrace, then the verdict must be for the plaintiff."

"I charge you that, gentlemen."

The error being that this deprived the defendant of its defense that the publications were true, in that he therein charged that the verdict must be for the plaintiff if the publications exceeded the limits of fair criticism in the discussion of public affairs and the plaintiff was unjustly exposed to obloquy and disgrace, whereas, the truth of the publications was a complete defense.

15. Because his Honor erred in charging plaintiff's eighth request, as follows, to wit:

" '8. I charge you that fair and honest criticism in matters of public concern is privileged, but the privilege is limited strictly to comments and criticism and does not extend to protect false statements, unjust inferences, imputation of evil motives or criminal conduct and attacks upon private character, the publisher being responsible for the truth of what he alleges to be facts.'

"I charge you that, gentlemen, modified, of course, and qualified by what I have already charged you and what I will charge you."

The error being that his Honor therein confused the question of privileged communication or privileged occasion with the question as to whether or not a publication is libelous

or not libelous, and erred in charging the jury that the privilege "does not extend to protect false statements, unjust inferences, imputation of evil motives or criminal conduct and attacks upon private character, the publisher being responsible for the truth of what he alleges to be facts," whereas, a privileged communication does furnish a defense, even to such a publication, and even though such a publication would be libelous and actionable but for the privilege, and his Honor thereby misled the jury.

16. Because his Honor erred in charging the plaintiff's eleventh request, to wit:

"11. If you find under the law and the facts in this case that the plaintiff is entitled to recover damages, in addition to any actual damages which may have been proven, you may give what in law is known as exemplary or punitive damages—that is, damages that may be a punishment to the defendant and an example to others.

"I charge you that, gentlemen."

The error being:

a. That this authorized the jury to award exemplary or punitive damages, even though they did not find from the preponderance of the testimony that the action of the defendant was reckless, wilful, wanton or malicious.

b. That this was a charge on the facts in violation of article V, section 26 of the Constitution, in that it indicated his Honor's opinion that plaintiff was entitled to punitive damages, in the event of a recovery, when this issue was for the sound discretion of the jury.

c. That punitive damages are not recoverable in this action.

d. That it allowed the jury to find punitive damages in the absence of express malice.

17. Because his Honor erred in charging the jury as follows, to wit:

"Just here, gentlemen, I desire to take up one of the requests of the defendant out of order; and before I read

that request I instruct you that privileged communications are matters for the jury after the Court has instructed you what privileged communications are under the law. In other words, you are to decide whether or not the communications or publications complained of were privileged. And for your guidance I charge you this seventh request of the defendant."

The error being that the question of whether or not the communications were privileged or made on privileged occasion, was entirely and exclusively for the Court, and his Honor should have charged the jury, under the entire evidence, that the publications in question were made on a privileged occasion and were privileged communications.

18. Because his Honor erred in refusing defendant's request 2b, which was as follows, to wit:

"2b. Because of the occasion and the manner in which these publications were made, I charge you that they were privileged communications and, as I will hereafter charge you, even though they were libelous, the publications being privileged, the defendant is not liable, unless they were accompanied or caused by express or actual malice, as I shall hereafter define to you."

The error being that this was a correct proposition of law, applicable to the issues made by the pleadings and testimony and defendant was entitled to have the same charged.

19. Because his Honor erred in refusing defendant's request 3b, which was as follows:

"3b. And before the jury can conclude that the publications were libelous they must find that they were intended or understood to reflect upon or relate to plaintiff's business or occupation and that they actually did affect plaintiff's business injuriously."

The error being that this was a correct proposition of law, applicable to the issues made by the pleadings and testimony, and should have been charged.

20. Because his Honor erred in refusing defendant's request 4c, which was as follows:

"4c. The ordeal of public scrutiny is many times a disagreeable and painful operation. But it is the result of that freedom of speech which is the necessary attribute of every free government, and is expressly guaranteed to the people of this country by the Constitution. The same may be said of the freedom of the speech as of the press: 'That among those principles deemed sacred in America; among those sacred rights considered as forming the bulwark of their liberty, which the government contemplates with awful reverence, and would approach with the most cautious circumspection, there is no one of which the importance is more deeply impressed on the public mind. That this liberty is often carried to excess, that it sometimes degenerates into licentiousness, is seen and lamented, but the remedy has not yet been discovered. Perhaps it is an evil inseparable from the good with which it is allied; perhaps it is a shoot which cannot be stripped from the stalk without wounding vitally the plant from which it is torn.' "

The error being that this was a correct proposition of law, applicable to the issues made by the pleadings and testimony, and tended to enlighten the jury on what the law means by commending a criticism of public men or men taking a part in public affairs, and tended to explain to the jury how far such fair and reasonable comment and criticism may be carried without becoming libelous, and it should, therefore, have been charged.

21. Because his Honor erred in refusing defendant's fifth request, as follows:

"5. I charge you as a proposition of law, that the publications in question were qualifiedly privileged communications."

The error being that the entire evidence shows, as a matter of law, that the publications in question were qualifiedly privileged communications, and his Honor should have so

instructed the jury, instead of allowing the jury to pass upon and decide this question of law.

22. Because his Honor erred in refusing defendant's ninth request, which was as follows:

"It is not alleged or proven that the publications had any relation to, or effect upon, plaintiff's business or occupation, and I charge you that they were not libelous upon the plaintiff in his business or occupation."

The error being that this was a correct statement of the issues made for the jury by the pleadings and testimony and his Honor should have so instructed them.

23. Because his Honor erred in refusing defendant's tenth request, which was as follows:

"There is no evidence that the publications had any injurious effect upon plaintiff's business or occupation, and the jury cannot consider any damages suffered by plaintiff in business or occupation."

The error being that this was a correct limitation of the issues raised by the pleadings and testimony for the jury to pass upon and should have been granted.

24. Because his Honor erred in refusing defendant's twelfth request, which was as follows:

"There is no evidence that the publications caused plaintiff any substantial damage in his private character or person, or that the plaintiff has been thereby exposed to public hatred, contempt, ridicule, or obloquy, or that he has been shunned, or avoided or suffered loss of society, or that his respectability has been diminished in the eyes of the public or his friends, and the jury cannot award any substantial damages for any of these elements."

The error being that this was a correct proposition of law, and the jury should have been so instructed.

25. Because his Honor erred in refusing defendant's thirteenth request, as follows:

"13. If the jury decide that plaintiff is entitled to recover, they can award only nominal damages."

26. Because his Honor erred in refusing defendant's six-teenth request:

"16. Even though the jury conclude that the publications were libelous, unless they further find from the preponder-ance of the plaintiff's testimony, that the defendant did not act in good faith under a *bona fide* belief that it was per-forming a moral duty owed the public and did not publish the articles in question in a *bona fide* effort to discharge such duty, but because of express or actual malice towards the plaintiff or an indirect or wrongful motive, then their verdict shall be for the defendant."

The error being that this was a correct proposition of law applicable to the issues raised by the pleadings and testi-mony and should have been granted.

27. Because his Honor erred in refusing defendant's seventeenth request, which was as follows:

"17. I charge you that the only acts or facts that the three publications charge against the plaintiff are the fol-lowing: That Mr. Wilson was fought at the polls by Mr. Fingal C. Black's friends, who had sprung a terrific fight upon Mr. Wilson in the last twenty-four hours, and before Mr. Wilson's friends could offset the attack, the voting was on. That brothers of Fingal C. Black were at the polls on the day of the election urging voters to cut Mr. Wilson. That there was a bitter controversy between Mr. Wilson and Mr. Fingal C. Black some time before the election, and in this controversy, Mr. Wilson was sustained by city council before whom the controversy was had. That the plaintiff, a brother of Fingal C. Black, did not make public his charges against or reasons for opposing Mr. Wilson until such a short time before the election that it was impos-sible for this candidate or his friends to meet, explain or counteract these charges. If the jury shall conclude that these charges of facts or acts were true in fact and that the criticisms and expressions of opinion therein contained in

the publications in question were made *bona fide* by the defendant in the discharge of what it conceived to be its moral duty to the public and without express or actual malice toward plaintiff or indirect or wrongful motive, then they must find for defendant."

And erred in ruling thereon: "And the seventeenth, I refuse, because, as I conceive it, to be a statement of what the meaning of the publications are, this is a matter entirely for the jury."

The error being that this was a correct construction of the writings before the Court, intended to intelligently place before the jury what portions of said publications were charges or allegations of fact, and what portions thereof were comment and criticism, so that the jury might intelligently decide whether the charges or allegations of fact contained in said publications were true, and whether the criticisms or expressions of opinion therein were fair and reasonable comment.

28. Because, for the reasons therein stated, his Honor should have granted defendant's motion for a new trial on the minutes on its second ground:

"2. That the verdict is so greatly excessive that it shows in itself, combined with the incidents of the trial and the record thereof, that it was the result of caprice and prejudice against the defendant, and not of impartial and mature deliberation upon the testimony by the jurors."

29. Because, for the reasons therein stated, his Honor should have granted defendant's motion for a new trial on the minutes on its third ground:

"3. That the verdict should be set aside because it is a result of political prejudice on the part of the jurors against the defendant and not of impartial and deliberate consideration of the testimony by the jurors, this appearing not only from the excessive amount of the verdict, but also from the argument of plaintiff's counsel to the jury."

30. Because, for the reasons therein stated, his Honor should have granted the defendant's fifth ground of the motion for a new trial, which was as follows:

"5. Because his Honor having charged defendant's request 4b, as follows, to wit:

" 'If the jury conclude that the publications were criticisms upon the conduct of plaintiff in a public matter—that is, expressions of opinions as to his conduct and not a defamatory charge against the plaintiff himself, then they shall find for the defendant.'

"There is a fatal variance between the charge and the inference that the publications were criticisms of the plaintiff in a public matter—that is, expressions of opinion as to his conduct and not a defamatory charge against the plaintiff himself."

31. Because, for the reasons therein stated, his Honor should have granted defendant's motion for a new trial on its sixth ground, which was as follows:

"Because, under his Honor's charge as to what constitutes a privileged communication, the entire evidence admitted only of the inference that the publications complained of were privileged communications, and there was no evidence of actual or express malice to overcome the privilege. The verdict, therefore, is contrary to the charge as applied to the testimony."

32. Because, for the reasons therein stated, his Honor should have granted a new trial upon defendant's seventh ground, which was as follows:

"7. Because his Honor having charged defendant's request 8½, as follows, to wit:

" 'The evidence should raise a probability of malice and be more consistent with its existence than its absence. When the occasion is privileged the presumption arises that the publication was *bona fide* and without malice, and it is incumbent on plaintiff to overcome this presumption. If, from defendant's point of view, strong words seem to be

justified, he is not to be held liable unless the jury can say that what he published was to some extent, at least, inconsistent with the theory of good faith.'

"The verdict is contrary to the charge because the entire evidence admitted only of the inference that the publications were privileged and plaintiff did not sustain the burden of proof by producing any evidence of express or actual malice to overcome the privilege."

33. Because, for the reasons therein stated, his Honor should have granted a new trial upon defendant's eighth ground, which was as follows:

"8. That his Honor having charged defendant's request 15, as follows, to wit:

" 'If the jury concluded that the acts or facts charged against the plaintiff in the publications were true as charged, then they must find that the publications were not libelous, because mere criticisms and expressions of opinion upon the public acts of plaintiffs, in which the general public was interested, unless the jury go further and find from the preponderance of the plaintiff's testimony that such publications were caused or accompanied by express or actual malice, as I have heretofore defined that term to you.'

"The verdict is contrary to the charge because the evidence admits only of the inference that the acts or facts charged against the plaintiff in the publications were true as charged and plaintiff did not go further and offer evidence to show that such publications were caused or accompanied by express or actual malice."

34. Because, for the reasons therein stated, his Honor should have granted defendant's ninth ground upon the motion for a new trial, which was as follows:

"9. Because his Honor erred in charging plaintiff's request 11, as follows, to wit:

" 'If you find under the law and the facts in this case that the plaintiff is entitled to recover damages, in addition to any actual damages which may have been proven, you may

give what in law is known as exemplary or punitive damages—that is, damages that may be a punishment to the defendant and an example to others.'

"Under this request, the Court allowed the jury to find punitive damages even though they did not find from the preponderance of the testimony that the defendant was guilty of any wilful or malicious act or conduct, but only mere negligence."

35. Because his Honor erred in refusing the defendant's motion for a new trial on the ground of after-discovered evidence, and in ruling thereon: "And I do not see much difference in the statements brought forward as grounds for a new trial than was actually testified to by some witnesses."

The error being that there was a substantial difference between the new evidence and the evidence offered on the trial, which was material and which would have been admissible on a new trial, and which would probably have changed the result, and that such evidence was discovered after the former trial and could not have been discovered before by the use of due diligence, and for these reasons, his Honor should have granted the motion.

36. Because his Honor erred in refusing defendant's motion for a new trial on the showing made that one of the jurors who rendered the verdict was influenced by passion and prejudice, whereas, he should have granted the motion and granted the new trial on the showing made.

*Messrs. Lyles & Lyles,* for appellant, submit: *Plaintiff failed to make out case under decision of the Supreme Court on the former appeal:* 93 S. C. 467. *No competent evidence of agency of Seats. Publication did not refer to business or occupation of plaintiff:* 63 S. C. 525. *Under the entire evidence the only reasonable inference was that the facts or acts charged to plaintiff in the publication were true and comments thereon were not actionable:* 76 S. C. 511; 241 Mo. 326; Ogders, Libel & Slander 34, 36; Newell, Slander

& Libel (2d ed.) 564, 566 & 567; 51 Am. St. Rep. 446;
113 Eng. Com. Law Reports (Best & Smith, Q. B., vol. 3)
769; 241 Mo. 234; 113 App. Div. (N. Y.) 510; 173 Fed.
227; Newell, 575; Ogders, 40, 41, 45, 50; 16 S. C. 14.
*Limits of fair criticism:* 93 S. C. 475; 1 N. & McC. 347;
9 Am. Dec. 707. *Privileged communication:* Newell, Slan-
der & Libel (2d ed.), ch. XIX, secs. 1-12, 63-68, 124, pp.
388-393, 475-478, 523; Ogders on Libel & Slander (M. M.
Bigelow Ed.), ch. VIII, pp. 167-70, 179, *et seq.;* 54 L. R.
A. 855; 51 Am. St. Rep. 446, 451. *Court should have
instructed jury that the occasion of publication was priv-
ileged:* Ogders, pp. 169-170; Newell 391, *et seq. Instruc-
tions as to malice:* Newell, p. 315; Ogders, ch. IX. *Charg-
ing inconsistent requests:* 11 Enc. Pl. & Pa. 145-148. *No
libel on business occupation:* 63 S. C. 530. *Punitive dam-
ages:* 76 Am. St. Rep. 317; 16 S. C. 440.

*Messrs. Rembert & Monteith* and *D. W. Robinson,* for
respondent, cite: *As to agency and authority of Seats.
Burden on principal to prove limitation:* 92 S. C. 42, 43;
47 S. C. 139; 96 S. C. 82. *Corporation liable for ultra
vires act of agent:* 37 S. E. 998; 124 N. C. 104, 105; 39
L. R. A. (N. S.) 213, 214. *Threats admissible in order to
bring all facts before jury:* 54 S. C. 595; 62 S. C. 335; *and
tending to show malice:* 81 S. E. 631. *Evidence supports
complaint. For jury to determine limits of fair criticism
was passed:* 80 S. E. 466. *Privileged communications:*
Newell, Slander & Libel (2d ed.), p. 566, sec. 4; 93 S. C.
475; 13 A. & E. Ann. Cas. 377; 75 Neb. 811. *Special
damage need not be proven:* 61 S. C. 151; 63 S. C. 530; 76
S. C. 514; Newell, Slander & Libel 838, 839, 847, 848, 867,
868, sec. 42; 80 S. E. 161. *Definition of malice:* 5 Words
& Phrases 429; 76 S. C. 122; 2 Rich. L. 179, 182. *Ques-
tion for jury:* 39 L. R. A. (N. S.) 214; Newell, Slander &
Libel 318-319. *Law implies malice from libelous publica-
tion:* 81 Ill. 77. *Definition of libel:* 71 S. C. 116. *Previous*

*threats:* 231 U. S. 588. *Punitive damages:* 62 S. C. 335; 54 S. C. 505; Newell on Slander & Libel 842; 91 S. C. 77. *Punitive damage may be awarded though no actual damages were sustained:* 85 S. C. 291; 95 S. C. 93. *Refusal to charge abstract propositon in defendant's request, 4c, as to freedom of the press, etc.:* 1 N. & McC. 347; 9 Am. Dec. 707. *Proper as it could serve no particular purpose. Meaning of publication a question for jury:* 80 S. E. 466; 231 U. S. 588. *Charge on facts:* 90 S. C. 33, 39, 461, 462; 91 S. C. 217. *Ruling on motion for new trial was within the discretion of the Court:* 94 S. C. 231; Newell, Slander & Libel 848. *Issues for jury:* 81 S. E. 482, 483; 75 S. C. 141. *After-discovered testimony:* 87 S. C. 157, 158; 33 S. C. 403; 74 S. C. 376; 93 S. C. 202. *Disqualification of juror waived:* 81 S. E. 489.

October 17, 1914.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for libel.

There was a former appeal herein, from an order sustaining a demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The order was reversed. The case is reported in 93 S. C. 467, 77 S. E. 51.

On the second trial the jury rendered a verdict in favor of the plaintiff for $20,000.00, but his Honor, the presiding Judge, made an order granting a new trial, unless the plaintiff would remit upon the record $15,000.00 of the verdict, whereupon the said amount was remitted, and judgment entered for the sum of $5,000.00, interest and costs; and the defendant appealed upon exceptions which will be reported.

The exceptions will be considered in regular order.

First Exception. Seats, unquestionably, was authorized by the defendant to report the proceedings growing out of

the election, which included the conduct of the plaintiff, and any others taking part therein. The threats were made by him, while he was making preparations for his report. He was, therefore, acting within the scope of his employment, and his conduct was binding on his principal, although he may have transcended his authority or violated his instructions. The principal is responsible for the acts of his agent, even when acting within the apparent scope of the agency. *Reynolds* v. *Witte,* 13 S. C. 5; *Rucker* v. *Smoak,* 37 S. C. 377, 16 S. E. 40; *Hutchinson* v. *Real Estate* Co., 65 S. C. 45, 43 S. E. 295; *Mitchell* v. *Leach,* 69 S. C. 413, 47 S. E. 290; *Williams* v. *Tolbert,* 76 S. C. 211, 56 S. E. 908; *Brown* v. *Tel. Co.,* 82 S. C. 173, 63 S. E. 744; *Robertson* v. *Tel. Co.,* 95 S. C. 356, 78 S. E. 977.

Second Exception. What has just been said disposes of this exception.

Third Exception. We shall not undertake to discuss the testimony in detail, as that would not subserve any useful purpose, but deem it only necessary to state, that there was testimony tending to prove every material allegation of the complaint.

Fourth Exception. What was said in discussing the first, disposes of this exception.

Fifth Exception. What has already been said, shows that this exception can not be sustained.

Sixth Exception. It was determined on the former appeal that the complaint stated facts sufficient to constitute a cause of action; and, as there was testimony tending to sustain every material allegation thereof, this exception must be overruled.

Seventh Exception. Paragraph 8, of the complaint, is as follows: "That the said publications above set forth were wilful, malicious and false, and tend to impeach the honesty, integrity and reputation of the plaintiff, to injure his character and reputation, and to expose him to public hatred, contempt, ridicule or obloquy, and to injure

his business or occupation, and by reason thereof the said plaintiff has been damaged in the sum of fifty thousand ($50,000.00) dollars." In the first place, it will be observed that the injury to the plaintiff's business is not the only wrong he is alleged to have suffered. Furthermore, if the allegations of said paragraph are true, to the effect that the publication tended to impeach his honesty and to injure his character, and to expose him to public hatred, contempt, ridicule and obloquy, then this would necessarily tend to injure his business.

Eighth Exception. What has already been said shows that this exception can not be sustained.

Ninth Exception. When the charge is considered in its entirety, there is no reasonable ground for supposing that the part mentioned in the exception was prejudicial to the rights of the appellant.

Tenth Exception. The proposition that it is necessary to allege evidentiary matter in order to lay the foundation for proof thereof is untenable..

Eleventh Exception. The portion of the charge mentioned in the exception must be considered in connection with the other parts of the charge, and when so considered it will be found to be free from error.

Twelfth Exception. When that part of the charge is considered in connection with what has already been said, and also with what was thereafter charged, it will be seen that it was not prejudicial to the rights of the appellant.

Thirteenth Exception. When the charge is considered in its entirety, it is apparent that the instruction contained in said exception was not harmful to the rights of the appellant.

Fourteenth Exception. It would be an injustice to his Honor, the presiding Judge, to construe so much of the charge as is mentioned in the exception without considering the charge as a whole, and when so considered, it is free from error.

Fifteenth Exception. What has already been said disposes of this exception.

Sixteenth Exception. When the language of the request is considered, in connection with what had already been and what was thereafter charged, the exception is without merit.

Seventeenth Exception. The entire charge shows that this exception is without merit.

Eighteenth Exception. What has already been said disposes of this exception.

Nineteenth Exception. What has already been said disposes of this question.

Twentieth Exception. The appellant has failed to satisfy this Court that there was any prejudicial error.

Twenty-first Exception. His Honor, the presiding Judge, could not have charged as requested without invading the province of the jury.

Twenty-second Exception. It would have been a comment on the facts if his Honor, the presiding Judge, had so charged.

Twenty-third Exception. Such a charge would have invaded the province of the jury.

Twenty-fifth Exception. What has already been said disposes of this question.

Twenty-sixth Exception. The appellant has failed to satisfy this Court that there was prejudicial error.

Twenty-seventh Exception. The pleadings showed very clearly what the issues were, and the appellant has failed to satisfy us that the jury was misled or misunderstood the issues in any respect.

Twenty-eighth Exception. Even if the verdict might have been subject to the objection that it was excessive before it was reduced in amount, it was not thereafter subject to such objection.

Twenty-ninth Exception. The appellant's attorneys seem to have abandoned this exception. It is, however, without merit.

Thirtieth Exception. What has already been said disposes of this exception.

Thirty-first Exception. For reasons already stated, this exception is overruled.

Thirty-second Exception. For the reasons just assigned, this exception is overruled.

Thirty-third Exception. For similar reasons, this exception is overruled.

Thirty-fourth Exception. Reasons already assigned dispose of this question.

Thirty-fifth Exception. What has already been said shows that this exception can not be sustained.

Thirty-sixth Exception. It has not been made to appear that his Honor, the presiding Judge, erroneously exercised his discretion.

Judgment affirmed.

MR. JUSTICE HYDRICK concurs in the result.